PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALINE JOAN IODICE; JAMES IODICE;
MARY J. IODICE,
                    *Plaintiffs-Appellants,*

                    v.

UNITED STATES OF AMERICA;
DEPARTMENT OF VETERANS AFFAIRS,
an agency of the United States of
America,
                    *Defendants-Appellees.*

No. 01-1640

---

BARBARA HANSEN, Administratrix of
the Estate of Julie Marie Hansen,
                    *Plaintiff-Appellant,*

                    v.

THE DEPARTMENT OF VETERANS
AFFAIRS,
                    *Defendant-Appellee.*

No. 01-1651

---

R. KENNETH BABB, Ancillary Public
Administrator of the ESTATE OF
MAIA CORY WITZL,
                    *Plaintiff-Appellant,*

                    v.

DEPARTMENT OF VETERANS AFFAIRS,
                    *Defendant-Appellee.*

No. 01-1654

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-99-778, CA-99-781-1, CA-99-779-1)

Argued: February 27, 2002

Decided: May 2, 2002

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Wilkins and Judge Michael joined.

---

**COUNSEL**

**ARGUED:** David D. Daggett, LEWIS & DAGGETT, Winston-
Salem, North Carolina; Robert Mauldin Elliot, ELLIOT, PISHKO,
GELBIN & MORGAN, P.A., Winston-Salem, North Carolina, for
Appellants. Gill Paul Beck, Assistant United States Attorney, Greens-
boro, North Carolina, for Appellees. **ON BRIEF:** Rodney A. Guthrie,
BENNETT & GUTHRIE, P.L.L.C., Winston-Salem, North Carolina,
for Appellants. Benjamin H. White, Jr., United States Attorney,
Greensboro, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

On September 4, 1996, Richard Thomas Jones, when driving his
car while severely impaired by alcohol and prescription drugs,
crashed into a car carrying several college students. The accident seri-
ously injured Aline Joan Iodice, and killed two other students, Julie
Marie Hansen and Maia Cory Witzl. Iodice and the administrators of
Hansen's and Witzl's estates (collectively "the students") brought

these consolidated actions, pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671-2680 (1994), against the United States.[1] They allege that employees of the Department of Veterans Affairs (VA) committed numerous negligent acts — including negligently dispensing narcotics to Jones and failing to institute, enforce, and monitor adequate policies concerning the dispensation of narcotics — that proximately and foreseeably caused their injuries. We affirm the district court's dismissal of their complaints, albeit on somewhat different grounds than those on which the district court relied.

## I.

In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we accept the facts as alleged by the plaintiffs and construe them in the light most favorable to the plaintiffs, but consider legal issues *de novo. See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997). The factual account below is drawn from the three amended complaints.

For more than fifteen years before the 1996 accident at the core of this case, doctors at VA facilities in Asheville, North Carolina, and Salisbury, North Carolina, treated Jones (a veteran) for a number of painful physical problems (including amputation of a leg and surgeries on his back) and administered necessary pain medications to him. Jones became dependent on both prescription drugs and alcohol. For example, according to his medical history, in the eighteen months before the accident, Jones took 30-40 Percocet pills a day.

The VA included Jones in a "drug registry" of addicts that it maintained at its Asheville facility. Jones developed a "history of requesting and receiving early refills of his prescriptions," and his wife urged VA employees to treat her husband for drug addiction and to limit his prescriptions. Nonetheless, the VA continued to prescribe narcotics to Jones and permitted him to receive prescription refills through the mail.

---

[1]Although each student also named the Department of Veterans Affairs as a defendant, the parties and the magistrate judge agree that the United States is the only proper defendant. Throughout this opinion we therefore treat the United States as the sole defendant.

On three occasions, VA facilities admitted Jones as an inpatient for alcohol or alcohol and drug detoxification; the last admission began on August 3, 1996. During that admission, Jones was reported to be drunk and under the influence of narcotics, and to have left the campus twice to drink. Throughout the admission, Jones demonstrated effects of alcohol and narcotics abuse including belligerent behavior, an unsteady gait, slurred speech, and a strong odor of alcohol. Later in August, Jones left the inpatient program without completing detoxification.

On August 30, 1996, after Jones had ceased to be an inpatient, a VA doctor prescribed narcotics for Jones in doses even greater than his usual heavy dose. On September 3, 1996, a VA employee, either a doctor or a staff member, permitted Jones to refill his prescription early. The next evening, driving under the influence of alcohol and narcotics, Jones caused the fatal accident. In sum, the students allege that "veteran Jones was being prescribed excessive narcotic drugs and other medications which, at the time of the collision, impaired his ability and judgment, and proximately caused said collision, and resulting injuries and damages" to them.[2]

The students sued the United States, alleging that the accident was proximately and foreseeably caused by breaches of a number of duties that the VA purportedly owed to Jones and to the public. A magistrate judge recommended that the complaints be dismissed for failure to state a claim. Apparently concluding that all claims asserted in the complaints constituted claims of medical malpractice, the magistrate judge ruled that the complaints should be dismissed because North Carolina law does not "recognize a cause of action for medical malpractice brought by [unrelated third party] victims of a patient who commits the type of crimes committed by Jones in these cases." The district court rejected the students' timely objections, accepted the

---

[2]Jones was convicted of one count of driving while impaired, one count of assault with a deadly weapon, and three counts of assault with a deadly weapon inflicting serious injury. *See State v. Jones*, 538 S.E.2d 917, 921 (N.C. 2000). On appeal, the Supreme Court of North Carolina vacated two additional convictions for the first-degree murder of Hansen and Witzl. *Id.* at 922.

magistrate judge's recommendation, and dismissed all three cases. These appeals followed.

In this federal tort claims action, arising out of events occurring in North Carolina, the law of that state controls. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994). We must rule as the North Carolina courts would, treating decisions of the Supreme Court of North Carolina as binding, and "depart[ing] from an intermediate court's fully reasoned holding as to state law only if 'convinced' that the state's highest court would not follow that holding." *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1003 (4th Cir. 1998). The students contend that they have alleged not one, but two, kinds of claims against Jones's health care providers — medical malpractice claims and ordinary negligence claims — and that North Carolina law permits them to bring both kinds of claims. We consider their arguments with respect to each kind of claim in turn.

## II.

By statute, North Carolina defines a "medical malpractice action" as "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider," including a doctor, a pharmacist, or a hospital. N.C. Gen. Stat. § 90-21.11 (1999). Unquestionably, some of the students' claims, specifically those attacking the quality of the medical care the VA provided to Jones in terms that track the statutory medical malpractice standard, constitute claims for medical malpractice. *See* N.C. Gen. Stat. § 90-21.12 (1999). Thus, it is clear that the students have alleged medical malpractice claims against Jones's health care providers. However, it is equally clear that North Carolina does not allow such claims. Rather, the Supreme Court of North Carolina has unequivocally held that "the relationship of physician to patient must be established as a prerequisite to an actionable claim for medical malpractice." *Easter v. Lexington Mem'l Hosp.*, 278 S.E.2d 253, 255 (N.C. 1981) (citation omitted).

Nevertheless, the students insist that North Carolina law permits them, Jones's victims, to bring medical malpractice claims against Jones's health care providers. They rely on *Pangburn v. Saad*, 326

S.E.2d 365 (N.C. Ct. App. 1985), and *Mozingo v. Pitt County Memorial Hospital*, 400 S.E.2d 747 (N.C. Ct. App. 1991). Neither case assists them.

*Pangburn* simply holds that third party victims of a wrongly released mental patient may sue the patient's health care providers for *negligent release. Pangburn*, 326 S.E.2d at 367. A claim for negligent release is not a claim for medical malpractice. In *Mozingo*, although the North Carolina Court of Appeals did permit a plaintiff to pursue a medical malpractice claim against a doctor with whom he had no personal doctor-patient relationship, the plaintiff himself was a patient allegedly afforded inadequate medical care, not the victim of a patient afforded inadequate medical care. *See Mozingo*, 400 S.E.2d at 751-53; *see also Webb v. Nash Hosps., Inc.*, 516 S.E.2d 191, 194 (N.C. Ct. App. 1999) (considering, but finding no facts to support, a *Mozingo* claim in a suit by a patient).

Thus, the students have not cited, and we have not found, a single North Carolina case permitting unrelated third party victims of a patient to sue the patient's health care providers for medical malpractice, or even suggesting that such claims are possible.[3] Instead, North Carolina courts have emphasized the policy reasons counseling rejection of such suits; "'doctors should owe their duty to their patient and not to anyone else' so as not to compromise this primary duty." *Russell v. Adams*, 482 S.E.2d 30, 33 (N.C. Ct. App. 1997) (rejecting a third party claim of harm based on the care provided by a medical provider to a patient) (citations omitted); *see also Childers v. Frye*, 158 S.E. 744, 746 (N.C. 1931) (holding that doctors do not have to accept patients); *Nash v. Royster*, 127 S.E. 356, 359 (N.C. 1925) (holding that doctors may limit the extent of their responsibility to patients by narrowing the scope of the doctor-patient relationship).

For these reasons, the district court properly dismissed the stu-

---

[3]Of course, North Carolina has recognized that *family members* of an injured patient can sue the patient's health care providers for malpractice causing loss of consortium, *see, e.g.*, *Webb*, 516 S.E.2d at 194, or loss of a child's services during his or her minority. *See, e.g.*, *Mozingo*, 400 S.E.2d at 749.

dents' claims to the extent that the claims sound in medical malpractice.

## III.

The students, however, maintain that contrary to the holding of the district court, not all of the claims alleged in their complaints sound in medical malpractice. They contend that North Carolina distinguishes between medical malpractice and ordinary negligence in the provision of health care. Moreover, they assert that they have alleged both kinds of claims in their complaints, and that state law permits them to bring ordinary negligence claims against Jones's health care providers, even if it does not allow them to bring medical malpractice claims.

## A.

North Carolina does permit a proper plaintiff to bring ordinary negligence claims, in addition to medical malpractice claims, against a health care provider. By statute, North Carolina defines a medical malpractice action as one that "aris[es] out of the furnishing or failure to furnish *professional services*" by health care providers. N.C. Gen. Stat. § 90-21.11 (emphasis added). State courts have held that when a negligence claim against a health care provider does not "arise out" of the "furnishing" of "professional services," it is not a medical malpractice claim, but rather may be brought as an ordinary negligence claim. *See, e.g.*, *Estate of Waters v. Jarman*, 547 S.E.2d 142, 145-46 (N.C. Ct. App. 2001) (ruling that when a claim against a hospital "ar-[ises] out of clinical care provided by the hospital to the patient," the claim sounds in medical malpractice, but when it "arises out of policy, management, or administrative decisions," it sounds in ordinary negligence).

When bringing an ordinary negligence claim against a health care provider, a plaintiff need not assert in his complaint that the medical care has been reviewed by an expert who will testify that it did not comply with the applicable standard of care, as is required in medical malpractice actions. *Id.* Rather, courts apply "the reasonably prudent person" standard of care in assessing the sufficiency of a claim for "negligence on the part of the hospital for administrative or manage-

ment deficiencies." *Id.* Thus, in such ordinary negligence actions the "liability of the defendant [health care provider] to the plaintiff depends on whether the defendant owed a duty of care to the plaintiff, which duty was violated, proximately causing injury to the plaintiff." *Blanton v. Moses H. Cone Mem'l Hosp. Inc.*, 354 S.E.2d 455, 457 (N.C. 1987).

Moreover, North Carolina courts have enumerated a number of areas in which a hospital's breach of its duty may give rise to a suit for ordinary negligence, rather than medical malpractice. These include "fail[ing] to promulgate adequate safety rules relating to the handling, storage, and administering of medication," *Bost v. Riley*, 262 S.E.2d 391, 396 (N.C. Ct. App. 1980) (citation omitted), *endorsed in relevant part in Blanton*, 354 S.E.2d at 455; "violat[ing] a safety standard which the hospital had purported to follow," *Blanton*, 354 S.E.2d at 458; "failing to follow hospital policies," *Waters*, 547 S.E.2d at 145; failing to "monitor on an ongoing basis the performance of physicians on its staff," *Blanton*, 354 S.E.2d at 458; *see also Waters*, 547 S.E.2d at 145; and failing to "monitor and oversee . . . treatment." *Bost*, 262 S.E.2d at 397. *See also Blanton*, 354 S.E.2d at 458 (citing additional ordinary duties); *Waters*, 547 S.E.2d at 145 (same); *Taylor v. Vencor, Inc.*, 525 S.E.2d 201, 203 (N.C. Ct. App. 2000) (same); *Bost*, 262 S.E.2d at 396-97 (same).

Review of the students' amended complaints plainly reveals that they have alleged that VA employees owed them a duty of care in a number of these areas. For example, they allege that the VA owed them duties relating to the training, monitoring, and supervision of its staff, and had an "obligation to maintain appropriate policies and procedures to provide proper treatment of its patients, including those addicted to drugs and alcohol." All three amended complaints also allege that in violation of its duty of care, the VA failed to promulgate adequate policies and procedures to regulate the dispensation of narcotics to drug-addicted patients, failed to follow existing policies and procedures to the same end, and failed to communicate with its staff on these issues.

Therefore, despite the contrary contentions of the United States and the conclusions of the district court, the students clearly do not assert

only medical malpractice claims. They also seek to hold the VA liable in ordinary negligence.

### B.

It is less clear whether North Carolina allows third parties who are victims of patients to pursue ordinary negligence claims against the patients' health care providers, and if so, whether the students have adequately pled such a claim.

As with medical malpractice claims, the students have not cited, and we have not found, any case in which the North Carolina courts have permitted a third party victim of a patient to bring an ordinary negligence action against a hospital.[4] *Cf. Blanton*, 354 S.E.2d 455 (suit by a patient); *Waters*, 547 S.E.2d at 143 (suit by a patient's estate); *Taylor*, 525 S.E.2d at 202 (same); *Bost*, 262 S.E.2d at 391 (same). Indeed, North Carolina courts have repeatedly discussed ordinary negligence claims against health care providers as involving a duty that "a hospital . . . owes to its patients." *Blanton*, 354 S.E.2d at 458; *see also, e.g.*, *Muse v. Charter Hosp. of Winston-Salem, Inc.*, 452 S.E.2d 589, 594 (N.C. Ct. App. 1995); *Burns v. Forsyth County Hosp. Auth. Inc.*, 344 S.E.2d 839, 845-46 (N.C. Ct. App. 1986); *Bost*, 262 S.E.2d at 396. However, although these cases do state that hospitals owe such duties to patients, no North Carolina case states (or suggests) that hospitals owe such duties *only* to patients.

Moreover, in a major decision analyzing and specifically permitting suits against hospitals based on ordinary negligence, the Supreme Court of North Carolina repeatedly emphasized that this cause of action represents "no more than the application of common law principles of negligence." *Blanton*, 354 S.E.2d at 457; *see also id.* at 459. This emphasis by the Supreme Court of North Carolina seems to direct courts to apply general principles of negligence in determining

---

[4]The *Pangburn* court considered principles of ordinary negligence in permitting a claim for negligent release of a mental patient, but held that in conjunction with statutory immunity, such a claim would only be cognizable for "'wilful, wanton or recklessly' negligent acts or . . . intentional acts." 326 S.E.2d at 338 (citation omitted).

whether a plaintiff has alleged a claim of ordinary negligence against a health care provider.

Generally, North Carolina does permit suits by third parties for negligence under certain defined circumstances. Most significantly for the present case, in *Hart v. Ivey*, 420 S.E.2d 174 (N.C. 1992), the Supreme Court of North Carolina considered "the liability of a social host who serves an alcoholic beverage to a person who then injures someone while operating an automobile while under the influence of an intoxicating beverage." *Id.* at 177. The *Hart* court held that the third party victim of a drunk driver could sue a social host who served alcohol to the driver, if the host "knew or should have known" that the person served "was under the influence of alcohol [and] . . . would shortly thereafter drive an automobile." *Id.* at 178.

The decision of North Carolina's highest court in *Hart* is obviously instructive in the present case, also involving provision of an intoxicant to a driver.[5] Although serving alcohol violates a state statute barring the provision of alcohol to persons under age 21, the *Hart* court expressly refused to base its decision on the statute. *Id.* at 176-77. Instead, the court relied on the common law duty of "every person who enters upon an active course of conduct . . . to exercise ordinary care to protect others from harm," and emphasized that its decision did not "recogniz[e] a new claim" but "appl[ied] established negligence principles." *Id.* at 178 (internal quotation marks and citation omitted). This emphasis seems particularly significant here given the Supreme Court of North Carolina's similar directive in *Blanton* that claims against hospitals for negligence (other than medical malpractice) are to be based on and governed by general ordinary negligence principles. *See* 354 S.E.2d at 457; *see also Pangburn*, 326 S.E.2d at 367 (relying on ordinary principles of negligence to allow suit by a third party for negligent release of a mental patient).

---

[5]The United States does not suggest that the difference in the intoxicant assertedly provided — narcotics rather than alcohol — distinguishes this case from *Hart*. This seems unlikely given that North Carolina treats alcohol and narcotics identically in all relevant respects for purposes of motor vehicle offenses. *See* N.C. Gen. Stat. §§ 20-138.1(a), 20-138.3(a) (1999).

To be sure, a hospital's legal position presents more complications than that of a social host. Having accepted Jones as a patient, the VA had an affirmative duty to him, *see, e.g.*, *Russell*, 482 S.E.2d at 33, a duty potentially in tension with its duty to the public if the latter required the hospital to restrict Jones's access to pain killers. A social host, meanwhile, whatever advertisers may suggest, has no positive duty to serve alcohol to guests. But North Carolina courts have acknowledged similar concerns in other cases simply by limiting ordinary negligence claims in the health care setting, not by barring such claims entirely. For example, in *Blanton*, the court allowed a suit against a hospital based on negligent failure to provide assistance to a doctor unqualified for his task, but required that the plaintiff show that the hospital knew the doctor to be unqualified. 354 S.E.2d at 459. Thus, it seems unlikely that a North Carolina court would hold that a potential conflict with the hospital's duty to treat Jones's pain eliminates, as a matter of law, its duty to "exercise ordinary care to protect others from harm." *Hart*, 420 S.E.2d at 178 (internal quotation marks and citation omitted).

In the case at hand, however, we need not definitively determine whether the Supreme Court of North Carolina would permit a third party victim of a patient to bring a properly pled ordinary negligence action against the patient's medical care providers. This is so because, even if such a claim exists under North Carolina law, the students have not alleged the facts necessary to support such a claim.

*Hart* (and its progeny) provide the only potential basis in North Carolina law for the students' claim that a third party victim can recover from a patient's medical provider for negligent provision of an intoxicant to the patient.[6] However, neither *Hart* nor the cases that follow it contains a discussion of the policy animating the approach taken. In the absence of such a discussion, we have few clues as to how the North Carolina courts would deal with certain differences between the *Hart* line of cases and the students' claims here. For example, a social host may fairly assume that a guest will immediately drink any alcohol provided, limiting the time frame of any foreseeable harm to third parties, while the timing of consumption of

---

[6]The medical context of the present case, of course, distinguishes it from those cited by the students that concern other professions.

prescription drugs is less clear. On the other hand, the Supreme Court of North Carolina has not distinguished between social hosts who provide alcohol and commercial providers of alcohol, and the latter might well argue that they too could not be sure of the timing of consumption. *See, e.g.*, *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131 (N.C. 1998). In considering what a North Carolina court would do in the present circumstance, we are guided by North Carolina's apparent wariness of health care claims by third parties, evidenced both by its flat ban on medical malpractice suits by third party victims, and the total absence of ordinary negligence cases permitting recovery against a health care provider by a third party victim.[7] Given that background, we can only conclude that North Carolina would require a tight nexus between the provision of narcotics and the harm to the victim, if it permitted third party plaintiffs to recover at all.

In *Hart* and its progeny, facing a similar calculus, the Supreme Court of North Carolina required a plaintiff to prove that the defendant possessed knowledge of the risk attendant to his negligent conduct. Indeed, North Carolina law subsequent to *Hart* makes it unmistakably clear that a claim based on negligent provision of alcohol to a driver cannot succeed without a showing that at the time the defendant supplied alcohol to the driver, he knew or should have known that the driver was intoxicated. *See Estate of Mullis*, 505 S.E.2d 131 (affirming summary judgment in favor of a commercial vendor); *Camalier v. Jeffries*, 460 S.E.2d 133 (N.C. 1995) (affirming summary judgment in favor of a social host). *Accord Smith v. Winn Dixie Charlotte, Inc.*, 542 S.E.2d 288, 293 (N.C. Ct. App. 2001). Both *Estate of Mullis*, 505 S.E.2d at 136, and *Camalier*, 460 S.E.2d at 134-35, affirmed grants of summary judgment to defendants sued by third party victims because the victim had presented no evidence of such knowledge; in both cases the plaintiff alleged and offered evidence of an automobile accident, caused by a drunken driver, to whom the defendant had supplied alcohol knowing that he would shortly drive

---

[7]Only *Pangburn* even arguably permitted such a claim. Beyond its limitation by operation of statutory immunity to cases involving more than "ordinary negligent acts," 326 S.E.2d at 337-38; *see supra* n.4, that case involved specific knowledge by the health-care provider of a threat to a specific victim. *Id.* at 347-48. *Pangburn* thus supports our holding as to *Hart*'s application in the present context.

a car. However, because the plaintiff failed to offer evidence that the defendant knew or should have known the driver was impaired at the time the alcohol was supplied to him, North Carolina's highest court held that the plaintiffs' claims failed, making it evident that such knowledge is a necessary element of such a claim. *Estate of Mullis*, 505 S.E.2d at 138; *Camalier*, 460 S.E.2d at 139. If it permitted liability at all in the case at hand, we believe North Carolina would require similar knowledge.

In sum, given the post-*Hart* decisions, we are not sure whether the North Carolina courts would allow a suit by a third party against a hospital for negligently providing narcotics to a driver. If so, we believe that North Carolina courts would, at a minimum, require a third party plaintiff to allege that the hospital "knew or should have known," when dispensing the drugs, that the patient was "under the influence of alcohol" or narcotics and "would shortly thereafter drive an automobile." *Hart*, 420 S.E.2d at 178. The students never make equivalent allegations.

They do allege that when VA officials treated Jones "during August-September, 1996" they "w[ere] aware, or should have been aware" of his history of drug and alcohol addiction and yet "continued to prescribe large doses of narcotics"; that "prior to and on September 4, 1996 . . . Jones was being prescribed drugs . . . which . . . impaired his ability . . . and proximately caused . . . [the] collision"; that "[a]s a proximate result of [the] VA's negligence [including a failure to supervise, manage, and administer proper dispensation of narcotics] . . . Jones operated his vehicle on September 4, 1996 while impaired from drugs or the combination of drugs and alcohol; and, as a result of his impairment, caused the collision"; and finally that "[i]t was reasonably foreseeable that" the VA's negligent acts "could or would result in injury or death to one or more third persons." However, the students never allege that when VA employees furnished Jones with narcotics, the employees knew or should have known that Jones was at that time "under the influence of alcohol" or narcotics *and* "would shortly thereafter drive an automobile." *Hart*, 420 S.E.2d at 178. Without such allegations, their ordinary negligence claims must fail.

We recognize that, unlike *Camalier* and *Estate of Mullis*, which involved summary judgments, in this case the district court dismissed

the complaints for failure to state a claim. This difference in proce-
dural posture would be significant if the students had alleged facts
sufficient to state the substantive elements of their claim. In this case,
they did not. Because the students have not alleged that when VA
employees provided narcotics to Jones, they knew or should have
known that Jones *at that time* was intoxicated and would shortly be
driving, they have failed to allege the elements necessary to state an
ordinary negligence claim under *Hart* against the VA, even if North
Carolina would permit such a claim.[8] Dismissal of a complaint for
failure to state facts supporting each of the elements of a claim is, of
course, proper. *See, e.g.*, *Winters v. Lee*, 446 S.E.2d 123, 126 (N.C.
Ct. App. 1994) (affirming dismissal of complaint attempting to assert
*Hart* claim because it failed "to allege facts sufficient to satisfy [one
of] the substantive elements of common law negligence" (internal
quotation marks and citation omitted)).

Thus, we do not affirm here because the students failed to *forecast
evidence* sufficient to *prove* an element of an ordinary negligence
claim, as the courts did in *Camalier* and *Estate of Mullis*, but because
the students have failed to *allege facts* sufficient to *state* elements of
such a claim. Even in these days of notice pleadings, *see Swierkiewicz
v. Sorema, N.A.*, ___ U.S. ___, 122 S. Ct. 992 (2002), a complaint
asserting a negligence claim must disclose "that each of the elements
is present in order to be sufficient." 5 Charles Alan Wright & Arthur
R. Miller, *Federal Practice and Procedure* § 1249 (2d ed. 1990 &
Supp. 2001) (citing cases to the effect that the elements of negligence
"are as essential under modern pleading as they ever were").

IV.

For the foregoing reasons, the judgments of the district court are

*AFFIRMED*.

---

[8]Nor is dismissal without prejudice appropriate since there is no reason
to believe that the students could have alleged as much. The fatal acci-
dent did not occur until 10:30 p.m. on September 4, and none of the stu-
dents suggest that Jones saw anyone at the VA on that date.