PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PORTIA BASS,
            *Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS &
COMPANY,
            *Defendant-Appellee.*

No. 02-1129

PORTIA BASS,
            *Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS &
COMPANY,
            *Defendant-Appellee.*

No. 02-1456

PORTIA BASS,
            *Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS &
COMPANY,
            *Defendant-Appellee.*

No. 02-1989

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Jackson L. Kiser, Senior District Judge.
(CA-00-64-5)

Argued: February 24, 2003

Decided: March 26, 2003

Before WILKINS, Chief Judge, and LUTTIG and
GREGORY, Circuit Judges.

Affirmed in part and vacated in part by published opinion. Judge Luttig wrote the opinion, in which Chief Judge Wilkins and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Tamika Chelsea Harris, Waynesboro, Virginia, for Appellant. James Moss Johnson, Jr., MCGUIREWOODS, L.L.P., Charlottesville, Virginia, for Appellee. **ON BRIEF:** R. Craig Wood, MCGUIREWOODS, L.L.P., Charlottesville, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

For several years, Portia Bass was an employee of E. I. DuPont de Nemours & Company ("DuPont"). Trouble began when DuPont decided to reassign Bass, changing her duties. From that point on, the relationship between employer and employee deteriorated until DuPont finally decided to terminate Bass. Before her termination, Bass filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). After her termination, she brought suit in federal district court alleging numerous claims of discrimination and even claims of a conspiracy between the EEOC and DuPont. The district court dismissed several of Bass' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Bass' remaining claims were dismissed at summary judgment. The district court also awarded costs and attorneys' fees to DuPont as the prevailing party, and issued Rule 11 sanctions against Bass' attorney. Bass appeals all these rulings by the district court. We conclude that the district court properly dismissed Bass' claims, and that its award of costs and attorneys' fees was appropriate. Those rulings we affirm. The district court failed to com-

ply with Rule 11 when it issued sanctions, however, and we accordingly vacate that ruling.

## I.

Because this appeal arises out of the grant of dismissal and summary judgment below, we view the facts in the light most favorable to Bass, the complainant and nonmoving party. The essential facts of the case, as well related by the district, are these. Bass is a black woman who is over forty. She worked for DuPont's Lycra division at the company's Waynesboro site for approximately fifteen years. In 1992, she became Coordinator for Material Safety Data Sheets and for Toxic Substances Control Act ("TSCA") and Chemical Hygiene.

On July 1, 1998, Bass' duties were changed. Bass became Coordinator of Chemical Safety, and her TSCA-related duties were assigned to Nancy Deputy, a white woman less than 40 years of age. In a letter dated July 27, 1998, Bass complained to DuPont management that she had not been given any reason for the change in her duties. In response, Lycra human resources manager Susan Kapalka conducted an investigation. Kapalka concluded that Bass was properly reassigned because of her "inability to complete TSCA work at the required pace" and because "[h]er breadth of business judgment does not meet the TSCA job requirements." J.A. 403. Kapalka acknowledged that Bass was not informed of these reasons by her supervisors when she was reassigned. Prior to being reassigned, Bass had been consistently promoted, given increasing responsibilities, and told that her performance was satisfactory. Bass received no reduction in pay as a result of the change in her duties.

Several months after her reassignment, Bass' supervisors asked her to resume duties for DuPont's Benger Laboratory site that required access to TSCA information. Because Bass was no longer a TSCA coordinator, and therefore believed she was not permitted to access TSCA information, she refused to resume those duties. In a letter dated March 4, 1999, Bass complained to management that the work environment had become hostile. In response, Kapalka put together a diverse investigative team made up of five people, including herself. The team spoke with Bass and discussed her complaints. Bass reiterated her complaints about a hostile work environment, but did not

allege that the environment was hostile due to her gender, race, or age. The investigative team also spoke with Bass' co-workers and supervisors. On April 4, 1999, the team issued a formal report, in which it concluded that Bass had been reassigned because of an expanding number of duties that fell within her job description, and her inability to perform all of those duties satisfactorily. In addition, the team concluded that Bass had sufficient access to TSCA information to perform her duties for Benger Laboratory, but was unwilling to change her view of how the work should be performed in light of her changed duties. The team recommended that Bass be assigned new duties.

During the investigation, Bass had been permitted to work in an office away from her co-workers and supervisors. After the team issued its report, Bass was instructed to return to her office to assume her new duties. She refused, again citing a hostile work environment. On May 10, 1999, Bass filed a charge with the EEOC. Her supervisors again demanded that she return to her office and assume her duties. Bass insisted that she did not have to do so during the pendency of the EEOC investigation. Her supervisors then called the EEOC, which confirmed that they could require Bass to assume her duties.

In early June, 1999, Bass continued to refuse to assume her duties or return to her office. After warnings, her supervisors escorted Bass from the Waynesboro site. Bass' termination was approved on June 16, 1999, but the termination date was moved forward to June 30, 1999, giving Bass just enough years of employment with DuPont to qualify her for pension benefits.

On August 7, 2000, Bass brought suit against DuPont. She alleged that DuPont was liable for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*; and the Equal Pay Act, 29 U.S.C. § 206(d). Bass also claimed that the EEOC and DuPont had conspired to hinder the investigation of her EEOC complaint in violation of 42 U.S.C. § 1985(3), *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and state conspiracy law.

DuPont moved to dismiss several of the counts in Bass' complaint pursuant to Rule 12(b)(6). The district court granted that motion with respect to Bass' hostile work environment, *Bivens*, and federal and state law conspiracy claims. Later, the district court granted summary judgment to DuPont on Bass' remaining Title VII, ADEA, and Equal Pay Act claims. Finally, the district court awarded costs and attorneys' fees to DuPont, and issued Rule 11 sanctions against Bass' attorney. Bass appeals all of these rulings.

II.

We consider first Bass' contention that the district court improperly dismissed several of her claims. In reviewing the dismissal of claims pursuant to Rule 12(b)(6), we take the factual allegations in the complaint as true and review any legal issues *de novo*. *See Iodice* v. *United States*, 289 F.3d 270, 273 (4th Cir. 2002).

On appeal, Bass argues that she was not required to plead facts in support of her hostile work environment claim. The Supreme Court has recently admonished that the requirements of notice pleading are not onerous. *See Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506 (2002). In *Swierkiewicz* v. *Sorema*, the Court held that a complaint in an employment discrimination lawsuit need not allege specific facts establishing a prima facie case of discrimination. *Id.* at 510-11. In other words, a plaintiff is not charged with "forecast[ing] evidence sufficient to prove an element" of her claim. *Iodice*, 289 F.3d at 281 (emphasis omitted). Our circuit has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim. *See Dickson* v. *Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)); *Iodice*, 289 F.3d at 281. These cases reject Bass' contention. While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

With that understanding, we turn to Bass' complaint to determine whether she has alleged facts sufficient to state the elements of her claims of hostile work environment based on gender, race, and age. Bass' complaint is full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment. In fact, Bass' only allegations in support of her claim that deal with gender, race, or sex are as follows: She states that "[p]laintiff an African American female was consistently paid less than and consistently did not advance as fast as similarly situated white men." J.A. 25. In the claims section of her complaint, Bass asserts that DuPont engaged in the various acts of which she complains "because of her race and sex," J.A. 29, and later, "age," *id*.

To state a hostile work environment claim, Bass must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey* v. *Balog*, 162 F.3d 795, 801 (4th Cir. 1998). We think that Bass has failed to allege facts sufficient to support at least the second and third elements of her hostile work environment claim. Even viewed in the light most favorable to Bass, the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim. Bass was required to plead facts in support of her claim, and she had failed in that regard.

Bass' federal and state law conspiracy claims also fail to meet even the low burden placed on a plaintiff at the pleading stage. As noted above, Bass alleges that the EEOC and DuPont conspired against her to impede the progress of her EEOC investigation. Bass asserts, *inter alia*, that DuPont refused to tell her with whom it spoke at the EEOC, that DuPont filed a late response to her complaint, and that the EEOC's records are devoid of information relating to her investigation. Bass claims that the conspiracy violated section 1985(3), *Bivens*, and state conspiracy law.

These claims were all properly dismissed. Bass' section 1985(3) claim fails because none of her allegations make out an injury to any right she possessed. Bass' conclusory assertions of conspiracy aside, DuPont had a right to engage in the actions Bass alleged, and those actions caused her no legally cognizable injury. Bass' *Bivens* claim fails for the additional reason that she has not alleged any facts that would support a finding that DuPont was acting as an agent of the United States. As for Bass' state law conspiracy claims, they also fail because Bass has done no more than assert that the EEOC and DuPont conspired together; the facts that she has alleged do not give rise to a reasonable inference of conspiracy nor do they describe an injury to one of her legally protected interests. Accordingly, the district court's grant of Rule 12(b)(6) dismissal was proper.

### III.

Bass also appeals the district court's grant of summary judgment to DuPont on her Title VII race and sex discrimination claims, her ADEA claim, and her Equal Pay Act claim. At the summary judgment stage, we view the facts in the light most favorable to the non-moving party, which in this case is Bass. We review the district court's grant of summary judgment *de novo*. *See Dawkins* v. *Witt*, 318 F.3d 606, 610 (4th Cir. 2003).

Having thoroughly reviewed the district court's opinion and the parties' briefs and submissions on appeal, we conclude that the district court did not err in its grant of summary judgment on Bass' claims. Her claims were lacking in factual or legal support. We therefore affirm on the reasoning of the district court.[1]

---

[1]We affirm the district court's reasoning with one exception. The district court stated that Bass had not adduced sufficient evidence to meet her burden of demonstrating that she was performing satisfactorily at the time of the adverse employment actions. *See* J.A. 73. This is certainly correct with respect to her termination, for she had refused to resume her duties at that point. But we think she had provided sufficient evidence of satisfactory performance at the time of her reassignment and the Kapalka letter. Up to that point, as even DuPont acknowledges, Bass had been promoted, received pay increases, and been told that her performance was satisfactory. We think that evidence enough to meet her burden with respect to her prima facie case. But, for the other reasons given by the district court, Bass' claims were properly rejected.

IV.

Finally, Bass challenges the district court's decisions awarding costs and attorneys' fees to DuPont and issuing Rule 11 sanctions against Bass' counsel. We review the district court's decision to award costs for abuse of discretion. *See Cherry* v. *Champion Intern. Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). Rule 54(d)(1) creates a presumption that costs are to be awarded to the prevailing party, which in this case is DuPont. *See id*. Bass argues that the district court abused its discretion by ordering her to pay $3627.26 in costs because this figure represents half of her disposable income. That figure was itself roughly half of the amount requested by DuPont. The district court's decision, which thoroughly examined all the costs requested by DuPont and reduced them significantly, was not an abuse of discretion.

We likewise review the district court's award of attorneys' fees for abuse of discretion. *See DeBauche* v. *Trani*, 191 F.3d 499, 510 (4th Cir. 1999). An award of fees to the defendant is appropriate where the plaintiff's action was frivolous, unreasonable, or without foundation. *See id*. The district court concluded that DuPont was entitled to attorneys' fees for its expenses in defending against the section 1985 claim and against the wage-based Title VII claims because those claims were frivolous. DuPont asked for $21,937.39 in fees. Applying the lodestar approach, the district court determined that the amount requested by DuPont was reasonable, but, taking into consideration Bass' financial circumstances, the district court halved the award. As a result, the actual attorneys' fees award was for $10,968.69.

We cannot say that the district court abused its discretion in arriving at that figure. Bass' section 1985 conspiracy allegations were frivolous on their face, and her wage-based discrimination claims lacked any foundation in the record apart from her own conclusory assertions. It does appear that the fees will impose a substantial financial burden on Bass. In *DeBauche* v. *Trani*, this court vacated and remanded an award of attorneys' fees because the lower court had failed to consider the plaintiff's financial position and the award appeared likely to force the plaintiff into financial ruin. *Id*. at 511. Here, however, the district court did take into account Bass' financial

position and drastically reduced the award. The resulting award was not an abuse of discretion.

Bass, or more accurately her attorney, also challenges the imposition of Rule 11 sanctions. The district court imposed $1000 in sanctions on Bass' attorney because it concluded that "the conspiracy claims put forth by Bass's attorney lacked any evidentiary support and were unlikely to have evidentiary support even after discovery." Supplemental J.A. 25-26. For the reasons stated above, we conclude that the district court did not abuse its discretion in determining that Bass' conspiracy claims warranted sanctions. *See Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (applying abuse of discretion review to imposition of Rule 11 sanctions).

However, in imposing sanctions, the district court failed to comply with the procedural requirements of Rule 11. Long after the resolution of Bass' claims on the merits, Dupont made a renewed motion for sanctions relating to the conspiracy charges in Bass' complaint. The district court allowed briefing and argument on that motion. In its ruling, the district court rejected DuPont's motion for sanctions because it "was not served and filed before the conspiracy claims were disposed of." Supplemental J.A. 24. The district court then proceeded, in the same order, to issue sanctions *sua sponte*. It reasoned that the "safe harbor" provision of Rule 11, which had barred the sanctions requested by DuPont, was not applicable to it.

This action by the district court violated Rule 11(c)(1)(B), which provides that

> [o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Fed. R. Civ. P. 11(c)(1)(B). Here, the court did not issue an order describing the sanctionable conduct and subsequently allowing Bass' attorney to show cause why she had not violated Rule 11.

DuPont argues that Bass' counsel received effective notice that sanctions would be imposed through its motion for sanctions and through an earlier suggestion by the district court that sanctions might be appropriate. While Bass' counsel did make arguments regarding the merits of sanctions in her brief responding to DuPont's renewed motion for sanctions, it appears that she relied primarily on the safe harbor provision of Rule 11. That provision of course does not apply to sanctions initiated by the district court, and thus Bass' attorney clearly was not contemplating that the court would issue sanctions. Also relevant is the fact that the district court imposed sanctions months after the resolution of Bass' claims on the merits. We have previously noted the "legal principle that a court should resolve sua sponte Rule 11 issues before resolution of the merits of the case," and stated that the failure of a district court to do so requires particularly stringent review of the court's action. *Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). Here, the fact that the district court did not comply with the procedural notice requirements of Rule 11 coupled with the late date at which sanctions were imposed convinces us that the district court's order imposing sanctions should be vacated.[2]

## CONCLUSION

For the reasons stated herein, we conclude that the district court's order dismissing several of Bass' claims was proper, that its grant of summary judgment was likewise correct, and that it did not abuse its discretion in awarding costs and attorneys' fees. Because it failed to comply with the procedural requirements of Rule 11, however, we vacate its order imposing sanctions.

*AFFIRMED IN PART; VACATED IN PART*

---

[2]Bass' counsel filed a letter objecting to DuPont's submission of a document in supplement of the record. Specifically, Bass objects to a document filed by DuPont in response to a request from this court regarding the briefing in the district court of the Rule 11 sanctions motion. We construe Bass' "objection" as a motion to strike and we deny the motion as moot in light of our decision to vacate the Rule 11 sanctions.