**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**GREENBRIAR PONTIAC–OLDS-MOBILE–GMC TRUCKS–KIA, INC., Defendant.**

**No. 2:03CV693.**

United States District Court, E.D. Virginia, Norfolk Division.

April 14, 2004.

**583**

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant's motion for attorney's fees and costs pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, Federal Rule of Civil Procedure 54(d), and Local Rule of Practice 54(D)(1) of the United States District Court for the Eastern District of Virginia. For the reasons set forth below, the motion for attorney's fees is **DENIED**. The bill of costs is **AWARDED**.

### I. Factual and Procedural History

On July 31, 2002, Anthony J. Smith ("Smith"), an African–American male, filed a charge with plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), alleging that he suffered harassment because of his race while employed as a mechanic shop valet by defendant Greenbriar Pontiac–Oldsmobile–GMC Trucks–Kia, Inc. ("Greenbriar"). Greenbriar employed Smith between July 11, 2002, and July 31, 2002.

In his EEOC charge, Smith claimed that he was "forced to resign ... due to racial harassment in the form of a racially bias [sic] comment, an offensive scare tactic, and unequal terms and conditions of employment through work assignments." (EEOC Charge, July 31, 2002, at 1.) In an affidavit accompanying the July 31, 2002 charge, Smith alleged that a white employee at Greenbriar said to a white supervisor that "I think all dark skinned people should be sent back," and the supervisor responded "I could not agree with you more." Smith interpreted that alleged exchange as suggesting the deportation of African–Americans to Africa. (Smith Aff. ¶¶ 7–8.) Further, Smith alleged that, beginning on the second day of his employment at Greenbriar, a noose appeared hanging off of a radio in the mechanic

Kenneth Michael Golski, Esquire, Amy E. Garber, Esquire, Equal Employment Opportunity Commission, Norfolk, VA, for Plaintiff.

Aaron Scott Walters, Esquire, Williams Mullen PC, Richmond, VA, David C. Burton, Esquire, Sara L. Berg, Esquire, Williams Mullen PC, Virginia Beach, VA, for Defendant.

shop. (*Id.* ¶ 5.) Smith stated that he had taken photographs of the noose. (*Id.*) However, Smith also stated that he did not mention the presence of the noose to anyone other than one co-worker, Anthony Bell ("Bell"), and did not tell management about the noose "because I felt the Respondent would just cover it up." (*Id.* at 5–6.) At some time after July 31, 2002, Smith furnished the EEOC with several photographs of a noose inside the mechanic shop at Greenbriar, apparently taken from a variety of angles and at different times. Finally, Smith alleged that, though he was hired as a valet, he was given janitorial duties because of his race. (*Id.* ¶ 3.)

The EEOC began investigating Smith's claims and, on August 9, 2002, sent Greenbriar a letter requesting certain information relevant to the investigation. On September 18, 2002, Greenbriar's attorneys sent a letter to the EEOC responding to the August 9, 2002 request for information and to Smith's charge. (*See* Mem. in Supp. of Def's Mot., at "Ex. C.") The letter denied Smith's allegations and stated that Smith voluntarily resigned on July 24, 2002, and set his own last day of July 31, 2002. (*Id.* at 1.) Further, the letter stated that Greenbriar had established procedures for internally handling claims of workplace discrimination, and that Smith was given a copy of these procedures in his employee handbook when he began working at Greenbriar but did not attempt to utilize them in order to resolve the alleged harassment. (*Id.* at 2–3.) Several attachments, including a copy of Smith's July 24, 2002 letter of resignation and the employee handbook, were attached to the letter, which concluded by requesting that the EEOC immediately dismiss the matter with a finding of no cause. (*Id.* at 6.)

The EEOC continued its investigation of Smith's charge. On November 19, 2002, Greenbriar's attorney received a call from an EEOC employee, who stated that the EEOC was interested in conducting an on-site investigation. By letter dated November 20, 2002, Greenbriar's attorney informed the EEOC that Greenbriar was "concerned" about permitting an on-site investigation, and requested a meeting with the EEOC to express its concern. (Mem. in Opp. to Def.'s Mot., at "Ex. 10.") Greenbriar again requested that the EEOC dismiss the matter with a finding of no cause. (*Id.*)

On January 2, 2003, an EEOC enforcement supervisor and a federal investigator interviewed Smith. (*See* Mem. in Supp. of Def's Mot., at "Ex. H.") Typewritten notes from that interview indicate that Smith stated he wrote his resignation letter as he did because he "wanted to keep in good standing." (*Id.* ¶ 16.) He stated that he was afraid after seeing the noose, felt "violated" by it, and believed that the allegedly racist employees might tamper with his car or food. (*Id.* ¶ 20.) Further, Smith stated that anyone turning on the radio in the mechanic shop would have seen the noose, and that his supervisor was only four feet away from Smith when the alleged racist comment was made. (*Id.* at 27–28.) On January 21, 2003, the enforcement supervisor, federal investigator, and an EEOC trial attorney again interviewed Smith. (*See* Mem. in Supp. of Def's Mot., at "Ex. J.") During the January 21, 2003 interview, Smith clarified some of the details of his claims. Also in January, 2003, the EEOC interviewed Bell, the only African-American technician working at Greenbriar and the only person Smith allegedly told about the noose. (*See* Mem. in Supp. of Def's Mot., at "Ex. K.") Bell stated that he did not recall the noose, but that a few technicians regularly made racist statements, which Bell had learned to ignore. (*Id.* ¶¶ 1, 3, 5.) On January 31, 2003, the EEOC issued a determination

letter stating that there was reasonable cause to believe that Greenbriar had violated Title VII. (*See* Mem. in Opp. to Def.'s Mot., at "Ex. 11.")

It is unclear from the record the extent to which either party further investigated Smith's claims during the following nine months. On September 30, 2003, the EEOC filed a complaint in the above-captioned matter, alleging that Greenbriar subjected Smith to a racially hostile work environment based on the open and obvious presence of the noose and the alleged racist comment made in the presence of Smith's supervisor. The complaint did not allege that Smith was constructively discharged or that he was subjected to unequal terms of employment. On November 4, 2003, Greenbriar filed an answer to the complaint. The parties proceeded to conduct discovery.

Smith was deposed on February 4, 2004. At that time, he indicated that the reason he did not report the noose to anyone in management was that, if management had known about the noose, it would have taken it down, and that Smith was not of the belief that management wanted the noose in the mechanic shop. (*See* Mem. in Supp. of Def's Mot., at "Ex. A.") He also stated that he did not believe that the noose nor the alleged racist comment was directed towards him. (*Id.* at 178.) Smith further stated that he felt comfortable working at Greenbriar and was not afraid of anything happening to him. (*Id.* at 224.)

Immediately following Smith's deposition, Greenbriar's attorney contacted the EEOC attorney to discuss whether the EEOC intended to dismiss the lawsuit, and threatened to seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure if the EEOC did not. In a letter dated February 16, 2004, Greenbriar's attorney again requested that the EEOC dismiss the lawsuit, outlined the applicable legal standards and evidence, and again

threatened Rule 11 sanctions. In a February 29, 2004 email, the EEOC attorney informed Greenbriar's attorneys that the EEOC anticipated voluntarily withdrawing the case. By agreed order, on March 9, 2004, this court dismissed the above-captioned matter with prejudice.

On March 12, 2004, Greenbriar filed its motion for attorney's fees and costs, a memorandum in support of that motion, a bill of costs, and several exhibits and declarations in support of its motion. Greenbriar seeks $53,007 in attorney's fees for the period that the federal lawsuit was pending, from approximately November 1, 2003 through March 9, 2004. The total amount of costs Greenbriar seeks is $2,554.29. Also on March 12, 2004, Greenbriar requested a hearing on its motion for attorney's fees.

On March 26, 2004, the EEOC filed a memorandum in opposition to Greenbriar's motion for attorney's fees and costs with attached exhibits. On March 31, 2004, Greenbriar filed its reply. No hearing is necessary for the disposition of Greenbriar's motion. The matter is ripe for review.

## II. Standard of Review

### A. Awarding Attorney's Fees Under § 706(k)

 Section 706(k) of Title VII of the Civil Rights Act of 1964 provides that

> [i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C.A. § 2000e–5(k) (2003). Thus, the awarding of attorney's fees under § 706(k) is discretionary. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412,

415, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Under Title VII, prevailing plaintiffs are awarded attorney's fees in all but "special circumstances." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Prevailing defendants, however, are awarded their attorney's fees only if the court finds that the plaintiff's action was "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694. This is true whether the losing plaintiff is the government or a private litigant, because under § 706(k), the government is treated identically to a private person. *Id.* at 422 n. 20, 98 S.Ct. 694.

■■■■ In determining whether to award fees to the successful defendant, the trial court must not "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694. The *Christiansburg* Court explained that "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.... Decisive facts may not emerge until discovery or trial." *Id.* at 422, 98 S.Ct. 694. In the Fourth Circuit, the assessment of fees against an unsuccessful plaintiff is a "conservative tool, to be used sparingly." *Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984).

B. *Standard for Award of Costs to Prevailing Party*

■■■■ Section 706(k) provides that "the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C.A. § 2000e–5(k); *see also Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694 n. 20. Thus, for purposes of costs, Federal Rule of Civil Procedure 54(d)(1) applies to the EEOC as it would to a private litigant.[1] *See Richerson v. Jones*, 506 F.Supp. 1259, 1267 (E.D.Pa.1981). Rule 54(d)(1) creates a presumption that costs are to be awarded to the prevailing party. Fed.R.Civ.P. 54(d)(1); *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 766 (4th Cir.2003). Nonetheless, it is within the trial court's discretion to order each party to bear its own costs in appropriate cases. *See, e.g., Constantino v. Am. S/T Achilles*, 580 F.2d 121, 123 (4th Cir.1978). If the court determines to deny costs to the prevailing party, it must state reasons for its decision. *Id.*

### III. Analysis

A. *Greenbriar's Motion for Attorney's Fees*

Section 706(k) permits an award of attorney's fees to a prevailing defendant where the plaintiff's claim was frivolous, unreasonable, or without foundation. *See Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694. All parties agree that Greenbriar is a "prevailing defendant," based on the EEOC's voluntary dismissal of the claim against it. *See, e.g., Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir. 1985) (considering defendant to have prevailed against plaintiff who voluntarily dismissed). Thus, Greenbriar can recover attorney's fees from the EEOC, if it es-

---

1. Therefore, when the United States is a litigant in a Title VII lawsuit, it is treated differently than when fees are sought against it under § 204(a) of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The presumption of Rule 54(d)(1) is inapplicable when fees are sought pursuant to EAJA. *See*

*Neal & Co. v. United States*, 121 F.3d 683, 685 (Fed.Cir.1997) (holding that Rule of the Court of Federal Claims 54(d), the operative language of which mirrors Federal Rule of Civil Procedure 54(d), does not apply to fees sought under EAJA).

tablishes that the EEOC continued to litigate after it became clear that the above-captioned lawsuit was frivolous, unreasonable, or without foundation.

██ To succeed on a Title VII hostile work environment claim based on alleged racial discrimination, the EEOC has the burden of establishing four elements: (1) unwelcome conduct, (2) based on Smith's race, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment and, (4) some basis for imputing liability to Greenbriar. *See Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 266 (4th Cir.2001) (stating elements of Title VII hostile work environment claim in a gender discrimination lawsuit). In order for allegedly hostile workplace conditions to be considered "sufficiently pervasive" to state a claim for a Title VII violation, the individual targeted by the discriminatory actions must subjectively perceive his environment to be hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Liability can be imputed to the employer under a negligence standard if the employer "knew or should have known" of the racially hostile work environment but failed to stop it. *See Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 333–34 (4th Cir.2003) (describing standard in co-worker harassment case); *Sharp v. City of Houston,* 164 F.3d 923, 929 (5th Cir.1999) (stating standard in a sexual harassment case); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 799–800, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting that courts have uniformly applied a negligence standard to hold employer liable for hostile actions in the workplace it "knew or should have known" about but failed to curtail).

██ Based upon the information and evidence it received during the course of its investigation into Smith's employment at Greenbriar, the EEOC had a non-frivolous claim against Greenbriar for creating a racially hostile work environment. First, a factfinder could reasonably find both the racist remark and the noose to be unwelcome conduct based on Smith's race. During interviews in January, 2003, Smith told the EEOC that the noose appeared the day after he began working at Greenbriar and that he felt threatened by its presence. The EEOC had no reason to doubt Smith's allegations at that time. Second, the continuing presence of the noose, which allegedly remained on display in the mechanic shop for three weeks, in combination with racist remarks, could be found sufficiently pervasive and severe to meet the third element of a Title VII hostile work environment claim, in light of Smith's January, 2003, statements that he felt threatened by them. Finally, there appeared to be adequate facts to conclude that Greenbriar had actual or constructive notice of the noose but failed to address its presence. The photographs Smith provided to the EEOC show a noose that is plainly visible from a variety of locations inside and outside of the mechanic shop.[2] Thus, based

---

2. In its reply memorandum, Greenbriar argues that the photographs of the alleged noose refute the argument that Smith's co-workers' alleged discriminatory behavior was open and obvious enough to put Greenbriar on constructive notice. (*See* Def.'s Reply Br., at 2.) Greenbriar argues that the rope Smith photographed is not obviously a hangman's noose, that it does not depict a person hanging from it, and that it "blends into the picture." (*Id.* at 2–3.) Greenbriar also suggests for the first time in the reply memorandum that Smith himself may have placed the noose. (*Id.*) Reviewing the photographs, it appears that a noose was hanging in the mechanic shop. Whether it was supposed to represent a hangman's noose and whether it was placed in the shop in order to harass Smith or even by Smith, are questions of fact upon which reasonable people not present in the mechanic shop could differ. They do not show that the EEOC's claim was frivolous.

on the EEOC's understanding of the facts prior to Smith's February 4, 2004 deposition, there was adequate foundation to pursue a Title VII hostile work environment claim.

■ Greenbriar also argues that if the EEOC had more fully investigated Smith's claims, it would have recognized that it could not succeed at trial.[3] More specifically, Greenbriar argues that the EEOC would have realized the subjective perception requirement of *Harris* could not be met in this case because Smith did not feel intimidated. Though Smith stated at the February 4, 2004 deposition that he did not feel intimidated, the EEOC was not so derelict in its duty to investigate the claims of Smith prior to filing the complaint on September 30, 2003, that the lawsuit was frivolous, unreasonable, or without foundation. In the course of investigating Smith's July 31, 2002 charge, the EEOC interviewed him at least twice, on January 3, 2003, and January 21, 2003. The EEOC's notes from these interviews indicate that Smith stated at that time that he perceived Greenbriar to be a racially hostile environment and that he did feel intimidated by the alleged racist actions of his co-workers. Nothing in the record suggests that the EEOC should have suspected that Smith would change his story thirteen months later, at the February 4, 2004 deposition. Accordingly, the court does not find that the EEOC's attorneys lacked an adequate foundation or were unreasonable in bringing the claims against Greenbriar.

Further, Greenbriar points to a number of statements Smith made in his July 31, 2002 charge and the accompanying affidavit which, Greenbriar argues, should have caused the EEOC to question Smith's credibility. In light of the open and obvious nature of the noose and the photographs that Smith provided of it, the EEOC had a sufficient basis outside of Smith's own statements for giving credence to his allegations. *Cf. Blue v. U.S. Dep't of Army,* 914 F.2d 525, 538 (4th Cir.1990) (affirming award of attorney's fees based in part on counsels' inadequate investigation where the district court found that "the only 'evidence' ever advanced by plaintiffs on their claims were their own 'unsubstantiated, self-serving, contradictory, and inconsistent claims of discrimination'"). Though in hindsight, the EEOC certainly should have conducted a more thorough evaluation of Smith's allegations, the court does not find the EEOC's investigation of the claim so inad-

---

**3.** The cases cited by Greenbriar in support of its claim that attorneys at the EEOC were required to conduct a more thorough investigation prior to filing the complaint contain far more egregious failures to evaluate the underlying facts than the case at hand. For example, in *Quiroga v. Hasbro, Inc.,* 934 F.2d 497 (3d Cir.1991), plaintiff's attorney had actual knowledge of the facts underlying the plaintiff's meritless claim for retaliatory discrimination, because the attorney drafted the letter to the employer complaining of discrimination and threatening to sue, and was intimately involved in the employee's subsequent determination to resign. In *Blue v. U.S. Dep't of Army,* 914 F.2d 525, 539–540 (4th Cir. 1990), the court affirmed the trial court's imposition of attorney's fees and sanctions against both the plaintiffs and their counsel under a variety of theories, including Rule 11, the "bad faith exception" to the American Rule, and EAJA, where the district court found that they filed their claims in bad faith. Greenbriar does not even attempt here to claim that the EEOC was motivated by bad faith to initiate this litigation. A showing of bad faith is not required for the imposition of attorney's fees under § 706(k). *Christiansburg,* 434 U.S. at 423, 98 S.Ct. 694. But "needless to say, if a plaintiff is found to have brought or continued [a Title VII] claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* (emphasis in original).

equate as to render the complaint frivolous, unreasonable, or without foundation.

### B. *Greenbriar's Bill of Costs*

 Though the EEOC objected generally to the award of Greenbriar's bill of costs in its memorandum in opposition to Greenbriar's motion, the EEOC did not comply with Local Rule 54(D)(2),[4] because it did not specify to which costs in particular it objected. Moreover, the EEOC has put forth no evidence or argument that overcomes the presumptive award of costs to the prevailing party under Federal Rule of Civil Procedure 54(d)(1). Greenbriar's bill of costs of $2,554.29 includes fees for service of summons, court reporter fees, and printing and copying costs. These expenses are all taxable to the non-prevailing party under 28 U.S.C. § 1920, and appear completely reasonable in light of the discovery conducted in this case. There appears to be no reason to withhold the award of costs to Greenbriar as prevailing party, and the bill of costs is awarded in full.

### IV. Conclusion

For the reasons set forth, Greenbriar's motion for $53,007 in attorney's fees is **DENIED.** Greenbriar's bill of costs in the amount of $2,554.29 is **AWARDED.** The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for both parties.

**IT IS SO ORDERED.**

---

4. Local Rule 54(D)(2) provides that "[a] party from whom costs are sought may serve an opposition to the bill of costs within eleven (11) days after service of the bill of costs." The opposition shall identify each item objected to and the grounds for the objection. Local Rule 54(D)(2), United States District Court, Eastern District of Virginia (2004).