**LIGGETT INDUSTRIES, INC., Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Respondent,**

**Stenson Begay, Real Party in Interest.**

**No. 89–9546.**

United States Court of Appeals, Tenth Circuit.

Jan. 9, 1991.

---

Charles L. Fine of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A., Phoenix, Ariz., for petitioner.

Earl Mettler of Mettler & LeCuyer, P.C., Albuquerque, N.M., for Stenson Begay, real party in interest.

Before HOLLOWAY, Chief Judge, and McKAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

■ This is a petition to review an order of the Federal Mine Safety and Health Review Commission filed pursuant to 30 U.S.C. § 816(a)(1). The Administrative Law Judge (ALJ) found that Stenson Begay, a certified welder, terminated his employment with Liggett Industries, Inc. (Liggett) because of a reasonable and good faith belief that his health and safety were endangered by the inadequate ventilation of welding fumes and noxious gases in his working area, and that he had communicated his concern to Liggett's management to the end that instead of simply quitting his employment, Begay was "constructively discharged" by Liggett. The central issue is whether the ALJ's findings are supported by substantial evidence. Our review of the matter leads us to conclude that the ALJ's findings are supported by the record and that his legal conclusions are correct.

The McKinley Mine, operated by Pittsburg & Midway Coal Company, Inc., is located in Northwest New Mexico on the

Navajo Indian Reservation, approximately 10 miles from Window Rock, Arizona, and 35 miles from Gallup, New Mexico. Liggett had several contracts with Bucyrus–Erie Co. to erect and install two 1370W dragline bases at the McKinley Mine and to remove the existing bases from the draglines and install new bases. Stenson Begay, the complainant in the present proceeding, was hired by Liggett in May, 1987, to perform welding work on the project. In connection therewith, Begay and the other welders did welding in compartments which were approximately 4' × 4' × 5'.[1]

On December 10, 1987, Begay, and several other welders, picked up their tools and walked off the job. Just what caused Begay to quit is the critical issue in the case. Begay's position is that he walked off the job because he reasonably believed that his health was being endangered by the fumes which accumulated in the compartments he had been working in, and that, although advised of his concerns, Liggett failed to take sufficient remedial action. Liggett's position is that Begay's quitting had nothing to do with working conditions, and that Begay was leaving for another job. More about all that later.

On June 26, 1988, Begay filed a complaint with the Mine Safety and Health Administration under 30 U.S.C. § 815(c), claiming, in essence, that he felt compelled to quit his employment with Liggett because he believed that his health and safety were endangered by inadequate ventilation of welding fumes and noxious gases from his work area. Thereafter, the case was heard in Gallup, New Mexico, on January 26 and 27, 1989. The ALJ filed his decision on May 17, 1989. Liggett Industries, Inc. v. Federal Mine Safety & Health Review Commission, 11 FMSHRC 887 (1989). On June 15, 1989, Liggett filed a petition for discretionary review with the Federal Mine Safety and Health Review Commission. 30

U.S.C. § 823(d)(2)(A). On June 26, 1989, the ALJ's Decision became final when the Review Commission, in effect, denied Liggett's petition, since no two members of the Commission voted to grant the petition for review. 30 U.S.C. § 823(d)(1).

■ The parties are in apparent agreement that in order for Begay to prevail he had the burden of showing that his refusal to work was because of conditions that he reasonably and in good faith believed to be hazardous to his health and that, in his case, he had communicated his concern to Liggett. *See Simpson v. Federal Mine Safety & Health Review Commission*, 842 F.2d 453 (D.C.Cir.1988). Begay did not have to prove that an actual hazard existed, only that he had a reasonable and good faith belief that such a hazard did exist. *Gilbert v. Federal Mine Safety & Health Review Commission*, 866 F.2d 1433, 1439 (D.C.Cir.1989) (listing FMSHRC cases). However, if in fact there is no hazard, such bears on the reasonableness of an employee's belief that his health is in danger.

Such was the way the case was submitted to the ALJ. The Decision of the ALJ was in commendable detail. After summarizing the testimony adduced at the hearing, the ALJ found that Begay quit his welding job because he reasonably and in good faith believed that inadequate ventilation inside the tub was hazardous to his health and that Begay had made a good faith attempt to communicate his concerns to management, who did not correct the situation. Thus, Begay was constructively discharged.

Our study of the record leads us to conclude that the ALJ's finding that Begay was constructively discharged is supported by substantial evidence.[2] Certainly such was the essence of Begay's own testimony. He described the ventilation problem in detail and stated that he had complained to

1. These compartments were pie-shaped sections of the dragline base or tub. On the project at issue, the compartments were ventilated primarily with the aid of "Dayton" blowers which exhausted air from the welding compartments inside the base. The record establishes that it was often necessary to use one blower to ventilate

two welding compartments because there were more welders than blowers.

2. The findings of the Commission with respect to questions of facts are conclusive if supported by substantial evidence in the record considered as a whole. 30 U.S.C. § 816(a)(1).

management on November 23 and 30, 1987, about his concerns.[3] Some remedial steps were taken, but, according to Begay, they did not correct the problem.

On December 10, 1987, a meeting was held at which time Begay, and others, again brought up the ventilation problem. It then became apparent that management was not going to buy any more blowers, as the job was nearing the end, and the statement was made that if there were further complaints about ventilation there would be layoffs. Discussion then turned to long lunch hours and leaving work early and ended with Begay and two other welders picking up their tools and walking off.[4] Begay and another welder and two representatives of management continued their discussion in a nearby trailer, and that discussion ended in heated words and Begay again quitting. Immediately after leaving the job site, Begay and another welder went to P & M Mining Company's safety office to once again complain, *inter alia*, about the ventilation inside the tub. We reject the suggestion of counsel that inasmuch as Begay did not state that he was leaving because of the ventilation problem at the precise moment he picked up his tools and left the premises, such necessarily defeats his claim.[5] The totality of the evidence is what counts.

Several other welders corroborated, at least to some degree, Begay's testimony. Cross-examination of Begay and other witnesses was vigorous, and counsel argues here that Begay's testimony, for example, should not be believed. The ALJ, however, was not of that view and found Begay's testimony to be straightforward and credi-ble. As the trier of the facts, such was his prerogative.

■ All of the welders at the job site were Navajo Indians. At the hearing before the ALJ, an interpreter was present to assist in translation, if the need arose. Johnson, a welder, testified in Begay's behalf and his examination and cross-examination was conducted in English. During a recess the ALJ had limited conversation with the interpreter concerning Johnson's ability to fully understand the questions put to him in English and to adequately respond thereto in English. Counsel for Liggett was "offended" by this inquiry and said so. The upshot, however, was that Johnson's testimony stood as previously given.

On appeal counsel argues that the ALJ's inquiry of the interpreter taints the entire proceeding and proves bias on the part of the ALJ. Counsel suggests that the ALJ's conversation with the interpreter "apparently concerned whether the Judge should believe that a certain witness's testimony was truthful." That is not our reading of the record. As indicated, after this incident, Johnson's testimony, as previously given, stood and was not changed or modified by any further questioning. The ALJ's comment did not indicate that he was going to necessarily accept Johnson's testimony as credible. Furthermore, the ALJ's limited questioning of one of Liggett's witnesses certainly does not prove bias.

■ Counsel for Begay was awarded attorney fees for services rendered in the hearing before the ALJ. In the present proceeding he asks that we award him attorney fees for services rendered in this Court, which counsel asserts are statutorily

---

3. On December 7, 1987, three days before Begay walked off the job, he saw a doctor for respiratory complaints, including coughing productive of mucus and blood. The doctor tentatively diagnosed Begay's ailment as work-related pneumonitis. Begay later visited the same doctor on February 15, 1988, who then diagnosed Begay's ailment as pneumonitis secondary to industrial gases.

4. Management stated that longer lunch breaks and leaving early would no longer be tolerated. The welders had occasionally left the tub for breaks to get out of the smoky conditions. There was concern that shorter lunch breaks would not give the men time to catch their breath in the fresh air.

5. Both the safety and evidentiary functions of the communication requirement were served by Begay's prior and subsequent communications regarding ventilation. *See Simpson v. Federal Mine Safety & Health Review Commission,* 842 F.2d 453, 459 (D.C.Cir.1988). A communication precisely contemporaneous with walking off the job is unnecessary in a situation such as this.

mandated. In our view, that matter should first be considered by the ALJ. We reject counsel's further contention that we can ourselves award him attorney fees under F.R.A.P. 38, since we do not hold that this petition for review was frivolous.

Decision affirmed and case remanded for possible further proceedings concerning attorney fees on appeal.