**Dorothy V. REED, Plaintiff**

v.

**AIRTRAN AIRWAYS, Defendant.**

**Case No. 07–CV–2170.**

United States District Court,
D. Maryland.

Jan. 22, 2008.

James Charles Strouse, Strouse Legal Services, Columbia, MD, for Plaintiff.

Susan Stobbart Shapiro, Council Baradel Kosmerl and Nolan PA, Annapolis, MD, for Defendant.

*MEMORANDUM*

J. FREDERICK MOTZ, District Judge.

Plaintiff Dorothy Reed ("Reed"), a 46–year–old white woman, brings suit against her employer AirTran Airways ("Air-Tran"), alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. 623(a)(1) ("ADEA"), and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Defendant has filed a motion to dismiss each of plaintiff's three claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

## I.

The facts, as alleged in Reed's complaint, are as follows. Dorothy Reed, a 46–year–old white woman, has worked for four years as a front desk employee for AirTran Airways at Baltimore Washington International Airport ("BWI").[1] (Compl. ¶ 1.) Reed's employer AirTran, an airline headquartered in Orlando, Florida with a Maryland office at BWI, is the only defendant in this case. Throughout her time at AirTran, Reed has been faithful, hard-working, punctual, and professional, and, until her most recent annual review, received "very good" performance evaluations, better than those of most of her colleagues. (*Id.* at ¶¶ 1–3.) According to Reed, over the past two years her African American coworkers and immediate supervisor "have been disrespectful and mean-spirited because of [Reed's] race ... and her age." (*Id.* at ¶ 4.)

---

1. For reasons discussed *infra* Part II, Reed's amended complaint, filed November 21, 2007, will be treated as the relevant complaint in considering defendant's motion to dismiss. All citations and references to Reed's complaint refer to that filing.

Reed's complaint depicts a work environment rife with verbal and physical abuse. In March 2006, Reed's coworker, Dorthea Crofton, yelled at Reed in front of passengers and threw a stapler at her. (*Id.* at ¶ 10.) On another occasion, Bobby West, a bag handler, "tried to hit [Reed] with a cart in the bag room and cause her injury." (*Id.* at ¶ 13.) When Reed complained to Mike Shiver ("Shiver"), AirTran's general manager at BWI, about a series of "malicious, mean-spirited and insulting encounters," he told her to tell "Ella Rodgers, [Reed's] supervisor, that the next time Rodgers and others insult [Reed], he [would] take disciplinary action." (*Id.* at ¶¶ 8–9.)

On August 22, 2006, three female African American supervisors called Reed into an office for her annual review.[2] Immediately after handing Reed the report, one of the supervisors "yelled out 'Needs Improvement! Needs Improvement!' in a harsh and unprofessional voice," causing Reed to leave the room, "humiliated and embarrassed." (*Id.* at ¶¶ 18–20.) When they learned that Reed had reported the incident, the three supervisors and Jackie Johnson, another African American supervisor who had "belittled and disrespected" Reed "many times," confronted Reed, "yelling at her loudly and in front of AirTran passengers and others." (*Id.* at ¶¶ 21, 23.) The next day, everybody gave Reed "the silent treatment." (*Id.* at ¶ 24.) When Reed left after her shift, Johnson followed her and yelled for her to return to the office, "deliberately humiliating her."

(*Id.* at ¶ 27.) When Reed returned, Johnson informed Reed that she would be filing a personnel action against her, and Johnson, Rodgers, and Shiver instructed Reed to "go home and think about her job." (*Id.* at ¶¶ 28–30.) Reed took that as a threat of termination or discipline and decided to take vacation time from that day, August 23, 2006, until September 3, 2006.[3] (*Id.* at ¶¶ 30–31.)

While Reed was out on vacation, AirTran took steps that adversely affected her work situation. For one, AirTran ignored Reed's work shift bid, preventing her from signing up for the early shifts she needed to help care for her sick mother. (*Id.* at ¶¶ 33–35.) Also, AirTran changed the tags in the employee parking lot without informing Reed, so she was unable to park there when she returned. (*Id.* at ¶ 36.) Following her vacation, Reed's supervisors continued not speaking to her; one of them threw Reed's badge on her computer, making Reed cry. (*Id.* at ¶¶ 38–39.) Reed reported the incident to Shiver and to human relations. (*Id.* at ¶¶ 40–45.)

According to Reed, her coworkers' abusive treatment then extended beyond the workplace. On the evening of October 5, 2006, "Reed received a threatening call from someone at AirTran at home who said if she came back to work she was dead. The number was on her cell phone; it was an AirTran number." (*Id.* at ¶ 46.) Later that evening, Reed discovered "white bitch, you're dead, fuck you" writ-

---

**2.** Reed's complaint notes that the procedure for the 2006 annual review was contrary to protocol because she was not given "warning or advance notice as required by the handbook" and "[p]reviously, only one direct supervisor would be in the room for her annual review." (Compl. ¶¶ 16–17.)

**3.** There is some discrepancy in Reed's vacation dates. After stating that her vacation

lasted until September 3, she subsequently alleged returning to work on September 26, 2006. (Compl. ¶¶ 31, 36.) Similarly, Reed's complaint is inconsistent on whether the incidents that culminated in her leaving work and not returning occurred on September 27, 2006 or October 5, 2006. (*See id.* at ¶¶ 43, 45.)

ten on her car. (*Id.* at ¶ 48.) On two additional occasions, unknown individuals wrote racial obscenities on Reed's car and front door.[4] (*Id.* at ¶ 51.) She reported the incidents to police and moved out of her apartment because she was afraid. (*Id.* at ¶¶ 49, 52.) Reed was scared to return to work, and, although she reported the incidents to Shiver and human resources, they took no action, stating that it was a police matter. (*Id.* at ¶¶ 47, 52, 53, 54.)

After timely filing an EEOC complaint, Reed received an EEOC Right to Sue letter on May 15, 2007 (*id.* at ¶¶ 55–56.) and filed her original complaint against AirTran in this Court on August 15, 2007. In Count I of her complaint, Reed alleges age discrimination under the ADEA on a constructive discharge theory. (*Id.* at ¶ 59.) Count II claims racial discrimination under Title VII based on reverse racist harassment leading to a hostile work environment. (*Id.* at ¶¶ 67–73.) In her third count, plaintiff alleges that AirTran "retaliated against her by allowing her fellow employees to threaten her and make her afraid to come to work" in violation of Title VII. (*Id.* at ¶¶ 74–80.) As part of her opposition to AirTran's November 1, 2007 motion to dismiss Reed's three claims, plaintiff filed an amended complaint on November 21, 2007.

**4.** Reed also makes a singular and vague reference to similar threats at her daughter's residence, which she attributes to AirTran employees because "no one knew the address of her adult daughter except AirTran. Reed put the daughter's address and phone number for emergencies." (Compl. ¶ 78.)

**5.** Defendant also points out that Reed's response to AirTran's motion to dismiss was not timely filed. (Def.'s Reply to Pl.'s Opp'n at 1.) Although it was due on November 19, 2007, Reed filed it on November 21, 2007. This Court will excuse the tardy filing.

## II.

AirTran argues, as a preliminary matter, that Reed's amended complaint, filed electronically on November 21, 2007[5] in response to defendant's Rule 12(b)(6) motion, should be dismissed as a violation of Rule 15(a) of the Federal Rules of Civil Procedure ("Rule 15(a)").[6] (Def.'s Reply to Pl.'s Opp'n at 4.) Under Rule 15(a), a party is entitled to amend a "pleading once as a matter of course at any time before a responsive pleading is served," or, if a responsive pleading has already been served, "only by leave of court or by written consent of the adverse party." Fed. R.Civ.P. 15(a). AirTran argues that because Reed failed to obtain leave of the court or AirTran's written consent prior to filing her amended complaint, it should be stricken. (Def.'s Reply to Opp'n at 4.) This argument fails, however, because a motion to dismiss is not a "responsive pleading" for the purposes of Rule 15(a). *See Smith v. Blackledge,* 451 F.2d 1201, 1203 n. 2 (4th Cir.1971). As a result, Reed was entitled to freely amend her complaint once without this Court's permission or defendant's consent, and her amended complaint replaces the original.

## III.

In *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court held that,

**6.** AirTran also points out that Reed's amended complaint does not follow Local Rule 103(6)(c) for Federal Courts in Maryland, which requires a party amending its pleading to file and serve—in addition to a clean copy of the amended pleading—"a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type." (*See* Def.'s Reply to Pl.'s Opp. at 4.) Because Reed's amended complaint was of right and replaces her original, the court will excuse plaintiff's failure to adhere to this technical requirement.

in order to survive a motion to dismiss, a plaintiff must plead plausible, not merely conceivable, facts in support of her claim.[7] *Id.* at 1974. The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Under Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)"), a plaintiff must provide "fair notice" and the "grounds" on which the claim rests. In considering a motion to dismiss, a court must "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

■ In the employment discrimination context, "[a]sking for plausible grounds ... simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 127 S.Ct. at 1959. The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." *Twombly,* 127 S.Ct. at 1973–74 (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Still, the Fourth Circuit "has not ... interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim," *see Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003); *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir.2002).

## IV.

### A.

In Count I, Reed alleges AirTran violated the ADEA by constructively discharging her based on age. (Compl. ¶ 59.) AirTran moves to dismiss this claim on the grounds that Reed has failed to allege all of constructive discharge's required elements. (Def.'s Mot. at 3–4.) For the reasons stated below, I agree, and Count I is dismissed.

Reed alleges that AirTran "wanted to replace her because she was approaching 50 and making more money than a new person it could hire who was much younger." (Compl. ¶ 63.) To that end, AirTran employees and supervisors made Reed's working environment intolerable by threatening her and being overtly hostile. (*Id.* at ¶¶ 65–66.) Reed's complaint states that she was replaced with "an individual under 40 years of age" who was "less skilled than Ms. Reed and paid far less than" she was. (*Id.* at ¶¶ 60–61.)

■ The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The four elements required to prove Reed's ADEA constructive discharge claim are that she was (1) at least 40 years old at the time of her discharge; (2) performing at a level that met her employer's legitimate expectations; (3) constructively discharged; and (4) replaced by somebody younger. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Alba v. Merrill Lynch & Co.,* 198 Fed.Appx. 288, 294 (4th Cir.2006). Reed's complaint clearly presents facts in support of the first two elements, stating

---

**7.** Prior to *Twombly, Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), set the standard, granting Rule 12(b)(6) dismissals for failure to state a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99.

that she was 46 years old at the time of her alleged discharge (Compl. ¶ 59.) and that she met legitimate expectations with a strong record as an AirTran employee: she was timely and professional and received annual reviews from her supervisors that were "very good, better than most of her fellow employees." (*Id.* at ¶¶ 1–3.) Whether Reed sufficiently pleads the fourth element when she states, without factual support, that "AirTran replaced Ms. Reed with an individual under 40 years of age" is a closer question that we need not address because Reed clearly fails to plead the third element—constructive discharge.

◼ To establish "constructive discharge" in the Fourth Circuit, a plaintiff must prove (1) that her working conditions were objectively intolerable, and (2) that her employer's actions were intentional and motivated by age bias. *Alba,* 198 Fed.Appx. at 294; *Shealy v. Winston,* 929 F.2d 1009, 1013 (4th Cir.1991). Because of the potential for abuse, constructive discharge findings must be "strictly cabined." *Alba,* 198 Fed.Appx. at 294. In its motion to dismiss, defendant argues that Reed's complaint neither alleges conditions that rise to the level of "objectively intolerable" nor that AirTran's actions were motivated by age bias. While I do not agree that Reed has failed to allege facts that plausibly suggest an objectively intolerable work environment, defendant is correct that Reed does not allege sufficient facts that AirTran was motivated by Reed's age.

◼ With regard to working conditions, the inquiry is whether a reasonable employee would find them so intolerable that he or she would be compelled to resign. *See Pa. State Police v. Suders,* 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *Alba,* 198 Fed.Appx. at 294. Reed's complaint alleges several incidents of workplace verbal and physical abuse, including supervisors and coworkers yelling at Reed in front of other employees and customers, mocking her during an annual review, throwing a stapler at her, hitting her with a baggage cart, tossing her badge at her, and berating her when she complained.[8] Reed also alleges that following a threatening phone call from an AirTran number telling Reed that "if she came back to work she was dead" and three incidents of graffiti on her car and front door, Reed was "afraid to return to work." (Compl. ¶¶ 46, 48, 51, 52.) Although Reed reported the incidents to Human Resources and Shiver, both "simply stated that it was a police matter and they could do nothing." (*Id.* at ¶ 53.) Assuming the truth of these facts, it is plausible that Reed legitimately feared for her safety if she returned to work, thus rendering her working conditions objectively intolerable. *See, e.g., Liggett Indus., Inc. v. Fed. Mine Safety & Health Review Comm'n,* 923 F.2d 150, 152–53 (10th Cir.1991) (finding constructive discharge of employee who quit based on reasonable and good faith health and safety concern—there, inadequate ventilation of welding fumes and noxious gases).

Reed's ADEA constructive discharge claim is insufficient, however, because it fails to plausibly allege that AirTran deliberately made Reed's working conditions intolerable *based on her age.* Under the ADEA, "the plaintiff's age must have 'actually played a role in [the employer's

---

8. In paragraph 30 of her complaint, Reed alleges that she understood her supervisors' admonishment to "go home and think about her job" as "a threat to fire her or take severe disciplinary action." (Compl. ¶¶ 29–30.) The caselaw makes clear, however, that an employer's threats to terminate or an employee's fears that he will be terminated do not create an objectively intolerable work environment for the purposes of proving constructive discharge. *Alba,* 198 Fed.Appx. at 294–95.

decisionmaking] process and had a determinative influence on the outcome.'" *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097 (internal citations omitted). When Reed alleges that her "age was a contributing factor in her termination; AirTran's actions were intentional and motivated by age" (Compl. ¶ 64.), she merely recites her claim's elements, offering "labels and conclusions" and unsupported speculation, which fail to plausibly allege AirTran was influenced by Reed's age.[9] *See Martin v. Sallie Mae, Inc.,* 2007 WL 4305607 (S.D.W.Va.2007) (finding insufficient a complaint that makes "conclusory allegations that [defendant employer] acted willfully, intentionally, recklessly, maliciously, and egregiously, [but] provides no factual basis for those accusations"). As a result, Reed fails to state a claim upon which relief can be granted.

#### B.

One can infer from plaintiff's complaint that Count II—Racial Discrimination—is premised on a theory that racial harassment led to an unlawful "hostile work environment."[10] Reed argues that her supervisors "were African–American [sic] who disliked whites" and that "[t]hese reverse racists threw items at her, embarrassed her in front of customers, yelled at her like she was a child, and treated her disrespectfully because she was white." (Compl. ¶¶ 69, 72.)

Title VII protects against racial harassment so severe as to create a hostile work environment, even absent a tangible adverse action against the employee.[11] *See Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972) ("[T]he relationship between an employee and his working environment is of such significance as to be entitled to statutory protection.").[12] A hostile work environment is marked by "extreme" conduct; "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). When evaluating a work environment, a court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116–17, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The elements of a Title VII claim that racial harassment created a hos-

---

**9.** Indeed, Reed states elsewhere in her complaint that "[t]he only reason for the[ ] disparaging, disrespectful comments was Reed's race." (Compl. ¶ 70.)

**10.** It does not appear that Reed intends to allege "constructive discharge" based on racial discrimination because she does not allege that she was replaced by someone of a different race as required for that claim. *See James v. Booz–Allen & Hamilton,* 368 F.3d 371, 375 (4th Cir.2004).

**11.** It is established that "reverse racism" (race-based discrimination that targets white employees), as alleged here, is actionable un-

der Title VII. *See, e.g., Bowen v. Missouri Dep't of Soc. Servs.,* 311 F.3d 878, 883–84 (8th Cir.2002); *Davis v. Kansas City Hous. Auth.,* 822 F.Supp. 609, 615 (W.D.Mo.1993).

**12.** To put this in perspective, establishing a hostile work environment under Title VII's ban on racial discrimination is less demanding than proving constructive discharge, which requires a "further showing" that "the abusive working environment became so intolerable that [the plaintiff's] resignation qualified as a fitting response." *Pa. State Police v. Suders,* 542 U.S. 129, 134, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

tile work environment [13] are as follows: (1) plaintiff experienced unwelcome harassment; [14] (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003); *Wang v. Metro. Life Ins. Co.,* 334 F.Supp.2d 853, 862 (D.Md.2004). Assuming the truth of the facts alleged in Reed's complaint, it is plausible that she will be able to prove this claim. Because her complaint makes clear that the alleged treatment was unwelcome and attributes it to her supervisor, the first and fourth elements are satisfactorily pled. Reed also plausibly alleges the second and third elements: race-based "harassing behavior sufficiently severe or pervasive to alter the conditions of ... [her] employment." [15] *Pa. State Police v. Suders,* 542 U.S. 129, 133, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (internal citations omitted).

■ Pleading a hostile work environment requires both an objective and a subjective showing, specifically an environment that "a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275. Reed's complaint alleges that her work environment was both subjectively and objectively hostile.

■ Reed pleads that she was subjectively affected by AirTran employees' al-

leged conduct, stating that she experienced "severe anxiety and depression such that she had to seek psychiatric care and medicine." (Compl. ¶¶ 6–7, 32.). *See Fitzgerald v. Henderson,* 251 F.3d 345, 358 (2d Cir.2001) (noting that damage to a victim's psychological well-being is relevant to establishing the environment was hostile). Her complaint described feeling "embarrassed and humiliated" and crying at work in response to others' abuse. (Compl. ¶¶ 20, 39, 40.) When Reed took a vacation following several incidents, she "went to her doctor for medication and ... was unable to eat or sleep." (*Id.* at ¶ 32.) After receiving threatening phone calls and racially-charged threats on her car, Reed was so afraid that she moved out of her apartment and did not return to work. (*Id.* at ¶ 52.) These factual allegations are sufficient to support a plausible inference that Reed "subjectively perceive[d] the environment [was] abusive" such that "the conduct ... actually altered the conditions of [her] employment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In addition, Reed describes an environment that discovery might reveal as objectively hostile. Some of this hostile conduct, however, Reed in no way alleges was linked to race, such as a co-worker throwing a stapler at Reed (*id.* at ¶ 10), a bag handler trying to hit her with a cart (*id.* at ¶ 13), a negative and belittling annual review from African American supervisors (*id.* at ¶¶ 14–20), her co-workers giving her

---

**13.** "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *Morgan,* 536 U.S. at 116 n. 10, 122 S.Ct. 2061 (2002).

**14.** Although this element is frequently litigated in cases alleging sexual harassment, where race-based harassment is alleged, courts generally assume the conduct was "unwelcome."

*See, e.g., Newman v. Fed. Express Corp.,* 266 F.3d 401, 405–06 (6th Cir.2001).

**15.** The behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is. *See e.g., La Day v. Catalyst Tech., Inc.,* 302 F.3d 474, 483 (5th Cir.2002); *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 967 (9th Cir.2001).

"the silent treatment" (*id.* at 25, 37), or a supervisor throwing Reed's badge on her computer (*id.* at ¶ 38). In addition, Reed's workplace's racial makeup (Reed was "the only Caucasian worker for AirTran at the front desk" and "[a]ll of the workers and supervisors except two ... were African–American" (*id.* at ¶ 68)) does not create an inference that the purported conduct was motivated by race, and Reed does not provide support for her contention that "[h]er supervisors were African–Americans who disliked whites." (*Id.* at ¶ 69.) Still, Reed does allege that AirTran's "African American workers and supervisors ... sometimes made anti-white racial comments, such as 'I'll get you, you white bitch' and 'You think you can do anything because you are white, don't you.'" (*Id.* at ¶ 71.) Reed's allegation of "many overt racist statements, including calling her 'White bitch'" (*id.*), is sufficient to plausibly allege a claim that racial harassment at AirTran created a hostile work environment.[16] Furthermore, the incidents that Reed alleges occurred at her home may also count toward the hostile work environment analysis. (*See* Compl. ¶¶ 46, 48, 51, 52, 73 (alleging that Reed received threatening phone calls and was "forced to move out of her apartment because of racial threats ... written on her door and car.").)[17]

## C.

In Count III, Reed alleges that "Air-Tran retaliated against her by allowing her fellow employees to threaten her and make her afraid to come to work." (Compl. ¶ 77.) These threats came "almost immediately after Ms. Reed complained to Human Resources" and the president of Air-Tran. (*Id.* at ¶¶ 78, 80.)

■ Title VII's prohibition on retaliation states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e–3(a). To demonstrate retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took an action against her "that a reasonable employee would have found materially adverse"; and (3) that action had a causal connection to the protected activity. *See Anderson v. G.D.C.*, 281 F.3d 452, 458 (4th Cir.2002); *EEOC v. Lockheed Martin Corp.*, 444 F.Supp.2d 414, 418 (D.Md.2006). Reed alleges conduct by AirTran that potentially amounted to "adverse employment actions," and her complaint plausibly links those adverse actions to protected activities.

■ An adverse employment action is one that "a reasonable employee would have found ... materially adverse" such

---

**16.** The Fourth Circuit has held that "one specific incident of racially offensive remarks" does not suffice to create a hostile work environment. *White v. Federal Express Corp.*, 939 F.2d 157, 160 (4th Cir.1991). Where, as here, plaintiff alleges that employees and supervisors "sometimes" or "many" times made racist statements, discovery may reveal that this was sufficient to create a hostile environment.

**17.** The circuits are split on whether incidents that occur outside of the office contribute to a hostile work environment. *See e.g., Gowesky*

*v. Singing River Hosp. Sys.*, 321 F.3d 503, 510–11 (5th Cir.2003) (concluding that "a harassment claim, to be cognizable, must affect a person's working environment" and excluding supervisors' comments over the phone and in writing during a period when plaintiff was not working); *cf. Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir.2002) (permitting non-workplace conduct as evidence that the behavior was motivated by animus toward the protected class—in that case, women).

that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lettieri v. Equant, Inc.,* 478 F.3d 640, 650 n. 2 (4th Cir.2007) (quoting *Burlington N. & Santa Fe Rwy. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)). Reed's complaint alleges that "[n]o one at AirTran did anything despite threats to her life, racial comments, and racial animus." (Compl. ¶ 76.) Reed's complaint also alleges other incidents that might be characterized as adverse actions, including AirTran's ignoring Reed's bid for work shifts despite her seniority (*id.* at ¶ 34) and changing the parking tags while Reed was on vacation without informing her (*id.* at ¶ 36). Under *White,* a court must "separate significant from trivial harms." *See Brockman v. Snow,* 217 Fed.Appx. 201, 206–07 (4th Cir.2007) (concluding that failing to respond to plaintiff's phone calls, assigning difficult work, and forcing her to walk "do not approach materiality," but that declining to allow a plaintiff to work from home "might be a material harm"). Ignoring Reed's request for shifts that would enable her to be at home with her ailing mother and failing to discipline employees and supervisors who threaten Reed, like not allowing an employee to work from home, might well be adverse actions in that they dissuade reporting.

■ The protected activity Reed alleges is complaining about the abusive treatment to AirTran authorities, including AirTran's general manager, Human Resources Department, and president.[18] (Compl. ¶ 75.). *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543–44 (4th Cir.2003) (complaining to supervisors about suspected Title VII violations may be a protected oppositional activity). To be a protected activity, Reed must have "had an objectively reasonable belief that she was complaining about conduct that constituted a Title VII violation." *Moser v. MCC Outdoor, L.L.C.,* 256 Fed.Appx. 634, ——, 2007 WL 4270877, at *10 (4th Cir.2007); *see also Jordan v. Alternative Res. Corp.,* 458 F.3d 332, 338 (4th Cir. 2006) ("We have ... held that opposition activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful.") (holding that plaintiff could not reasonably believe a single racially derogatory comment violated Title VII). AirTran correctly points out in its motion to dismiss that when Reed reported the offending conduct to her supervisors she made no allegation that it was race-based. (Compl. ¶¶ 8–9 (complaining to supervisors about "malicious, mean-spirited and insulting encounters"); *id.* at ¶ 22 (complaining to a "white financial supervisor" about a negative and demeaning annual review); *id.* at ¶¶ 40, 43 (complaining to her supervisor and to Human Resources about her coworkers' giving her the silent treatment and throwing a badge at her); *id.* at ¶ 47 (complaining to Human Resources about threatening phone calls she received at home from what she believed was an AirTran number).) Nevertheless, to the extent that Reed was reporting verbal and physical hostility from her African American coworkers and the racial threats she received at home, it is plausible that a reasonable person in Reed's position would believe she was complaining about conduct that violates Title VII.

---

18. Of the two categories of protected activities—participation and opposition—this fits into the latter category. *See E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 406 (4th Cir.2005) ("As we have recognized, protected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities, ... as well as complain[ts] ... about suspected violations." (internal citations omitted)).

Because Reed's alleged protected activity (complaining) occurred just before and during the time of AirTran's alleged adverse actions (failing to protect her against threats and abuse from coworkers and ignoring her request for work shifts) and involved a similar cast of coworkers and supervisors, Reed's complaint plausibly pleads that the two are causally linked.

Accordingly, AirTran's motion to dismiss Count III of Reed's complaint is denied.

### ORDER

For the reasons stated in the memorandum being entered herewith, it is, this 22nd day of January 2008

ORDERED

1. Defendant's motion to dismiss is granted in part and denied in part;

2. Count I is dismissed; and

3. Counts II and III are *not* dismissed.