**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff

v.

**PERFORMANCE FOOD GROUP, INC., Defendant.**

Civil Action No. MJG–13–1712.

United States District Court, D. Maryland.

Signed March 11, 2014.

See, also, 16 F.Supp.3d 576, 2014 WL 1760927.

Debra Michele Lawrence, Gwendolyn Young Reams, Lindsey Anne White, Maria Salacuse, Tanya Lea Goldman, and David John Staudt, U.S. Equal Employment Opportunity Commission, Baltimore, MD, for Plaintiff.

Rosemary P. Joyce, Littler Mendelson, PC, Jean L. Schmidt, New York, NY; Kevin Michael Kraham, Littler Mendelson, PC, Washington, DC; and Kristin R. Culbertson, Littler Mendelson, PC, Phoenix, AZ for Defendant.

## MEMORANDUM AND ORDER RE: DISMISSAL

GARBIS, District Judge.

The Court has before it Defendant's Partial Motion to Dismiss and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

## I. *SUMMARY*

At all times relevant hereto, Defendant Performance Food Group, Inc. (including related entities) ("PFG") has been engaged in the business of supplying food and other products to restaurants, hotels, and other food retailers. The "Broadline Division"

of PFG is comprised of multiple operating companies, or distribution centers, that "distribute[ ] a broad array of national and proprietary brand food and related products" to independently-owned restaurants, certain corporate-owned and franchisee chain locations, and non-commercial customers. Am. Compl. ¶¶ 5, 8.

On March 23, 2010, the Court issued a Summons Enforcement Order relating to a then-ongoing United States Equal Employment Opportunity Commission ("EEOC") investigation of alleged discriminatory employment practices on the part of the entity now identified as "Performance Food Group, Inc." and/or related entities. *See* Case No. 1: 09–cv–02200–MJG [Document 33]. The EEOC, by the instant lawsuit, asserts claims in two Counts against PFG:

- Count One: Alleging an ongoing pattern or practice of gender-based discrimination for failing to hire a class of female applicants for certain operative positions at PFG's warehouses.
- Count Two: Alleging a failure to promote a female employee, Julie Lawrence, to a supervisory position because of her sex.

By the instant motions, PFG seeks dismissal of all claims in Count One.

## II. *RELEVANT FACTUAL BACKGROUND* [1]

### A. *Structure of PFG's Broadline Division*

At all relevant times, Defendant PFG has owned and operated Broadline Division warehouse facilities located across the United States in Florida, Georgia, Maryland, Massachusetts, Tennessee, and Texas, among other states. Employment opportunities at the warehouse facilities include "operative positions," defined as "intermediate-skilled occupations [that] include workers who operate machines or factory-related processing equipment." Am. Compl. ¶ 72. Examples of operative positions include: "selector; receiving clerk; yard jockey; driver; driver trainee; driver check-in; forklift operator; mechanic; dispatcher; fueler; meat cutter; meat packer; router; sanitation specialist; transportation supervisors; and warehouse supervisors." *Id.* ¶ 71.

The Broadline Division is organized into three Regions—Northeast, Southwest, and Central. Each Region has a Regional Vice President of Operations who reports to PFG's Corporate Senior Vice President of Operations. The "Regional Vice Presidents of Operations are responsible for . . . reviewing applicant flow for operative positions." *Id.* ¶ 70. The Corporate Senior Vice President of Operations is responsible for overseeing the operations of all of the warehouse facilities in all three Regions. From on or around January 1, 2004 through December 31, 2008, Dan Pekscamp ("Pekscamp") was PFG's Corporate Senior Vice President of Operations. Since on or around January 1, 2009, Jeff Williams has served as PFG's Corporate Senior Vice President of Operations.

Each Region also has a Regional Vice President of Human Resources who reports to the Corporate Senior Vice President of Human Resources. The "Regional Vice Presidents of Human Resources [are] responsible for . . . the hiring, discipline, promotions, terminations, and compensation practice for the Broadline facilities in their respective Region." *Id.* ¶ 77. The Corporate Senior Vice President of Human

---

1. The "facts" herein are as alleged by Plaintiff EEOC and are not necessarily agreed upon by Defendant PFG.

Resources and Chief Human Resources Officer is responsible for overseeing all of the human resources functions at all of the Broadline Division warehouse facilities. From around November 2004 through May 2008, Charlotte Perkins was PFG's Chief Human Resources Officer. Since around May 2008, Jane Mannion has served as PFG's Corporate Senior Vice President of Human Resources and Chief Human Resources Officer.

### B. *Pattern or Practice*

The EEOC alleges that "[s]ince at least July 1, 2004, Defendant PFG has maintained and continues to maintain a standard operating procedure of discriminating against females in its hiring of operatives at its Broadline facilities." Am. Compl. ¶ 80. During an operational meeting in 2006, Pekscamp "informed managers that from his observation and experience, women cannot do warehouse work." *Id.* ¶ 81. In November of 2006, while touring PFG's Carroll County, Maryland warehouse facility, Pekscamp and Dave Russ, Northeast Regional Vice President of Operations, expressed displeasure at the hiring of female workers at the warehouse, "stating ... that it would be a good idea to get the females 'out of here.'" *Id.* ¶ 82. Around that time, Pekscamp instructed a manager at the Carroll County facility "to discharge a female employee and questioned why they continued to 'hire these girls.'" *Id.* ¶ 83. "On February 18, 2010, this Court ordered that Defendant produce hiring data for employees and applicants within Defendant's Broadline division over which ... Pekscamp and/or Regional Vice President of Operations maintained ultimate control." *Id.* ¶ 92.

The EEOC alleges examples of gender-based discrimination relating to employment decisions at PFG's warehouse facilities, including:

- *Elizabeth, NJ facility*—Marisol Soto, a former Transportation Supervisor at the Elizabeth facility, was interested in being promoted to Warehouse Supervisor, but "'was told that it would be 'useless and nonproductive for her to apply' because the job was not for her and she could get 'hurt as a girl.'" *Id.* ¶ 91.

- *Lebanon, TN facility*—April Campbell applied for a warehouse selector position at the Lebanon, TN facility but never received a response regarding her application. Her neighbor, a male forklift operator at the facility, "told her that Defendant 'had a real problem with women working there.'" *Id.* ¶ 90.

- *Little Rock, AR facility*—Sometime in 2008, a hiring manager at the Little Rock facility told Kimberly Avery, a warehouse applicant with seven years of experience, that PFG "'did not feel safe with women working in the warehouse, did not want women working in the warehouse, that the work was too strenuous, women didn't last, they quit, they had child care issues.'" *Id.* ¶ 88.

- *Richmond, VA facility*—In January 2007, the Vice President of Human Resources at the Richmond facility "openly stated that women could not do warehouse work and that Defendant would not hire them." *Id.* ¶ 86.

- Springfield, MA facility—Paul Green, the Vice President of Operations at the Springfield facility, instructed the Warehouse Manager "'not to waste his time interviewing or hiring females for warehouse work as they didn't work out.'" *Id.* ¶ 87. Green and Pam Burns, the facility's Human Resources Director, "told the Warehouse Manager that females in the warehouse 'were a

distraction' and 'couldn't do the job.'" *Id.*

- *Temple, TX facility*—A warehouse selector at the Temple, TX facility told driver applicant Lillian Akins "that she should not bother applying ... since Defendant 'would not hire female drivers.'" *Id.* ¶ 89.

Upon review of applicant and hiring data produced by PFG, the EEOC determined that there was "a statistically significant shortfall of female operatives" in not only individual warehouse facilities in all three PFG Regions, but also in pooled results. Upon review of static workforce data, the EEOC determined "that employment of female operative workers at Defendant has been and continues to be less than that of Defendant's competitors in the relevant labor market" for both the time period during Pekscamp's tenure at PFG, as well as the time period since his departure. *Id.* ¶ 94.

## III. *DISMISSAL STANDARD*

■ A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." *Id.* A com-

plaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration in original)).

## IV. *DISCUSSION*

In Count One, the EEOC asserts claims under Section 706 (42 U.S.C. § 2000e–5) and Section 707 (42 U.S.C. § 2000e–6) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* The EEOC alleges:

> Since at least July 1, 2004, Defendant has engaged in unlawful employment practices at its Broadline facilities, in violation of Sections 703(a)(1) and (a)(2) of Title VII, 42 U.S.C. § 2000e–2(a)(1) and (a)(2). The practices include an ongoing pattern or practice of failing to hire a class of female applicants for operative positions at Defendant's Broadline facilities because of their sex (female).

Am. Compl. ¶ 62.

■ Title VII makes it unlawful for an employer "to fail or refuse to hire ... any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sec-

---

**2.** All "Rule" references herein are to the Federal Rules of Civil Procedure.

tions 706 and 707 are the enforcement provisions that allow the EEOC to bring a civil action against an employer for violations of Title VII. *See id.* §§ 2000e–5(f)(1), 2000e–6(a), (c). The EEOC may seek equitable relief on behalf of employees subject to violations of Title VII pursuant to both §§ 706 and 707. However, in an action brought pursuant to § 706—but not § 707—the EEOC may also obtain, for such employees, legal relief including compensatory and punitive damages.[3]

PFG contends that a pattern or practice claim can be brought only under § 707 and not under § 706.[4] The contention is significant herein because, as stated by PFG:

> There are significant differences in the legal frameworks that apply to actions under Sections 706 and 707. *Serrano v. Cintas Corp.*, 711 F.Supp.2d 782, 787 (E.D.Mich.2010). Section 706 actions proceed under the *McDonnell Douglas* burden-shifting framework, where the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Section 707 actions, however, proceed under the two-part *Teamsters* burden-shifting framework, where, if there is a finding of a pattern

or practice of discrimination, the burden of persuasion is shifted to the defendant on the question of individual liability. [Document 27] at 3; *see also id.* at 4–6 ("The EEOC's attempt to bring a pattern or practice claim under Section 706 contravenes the express language of Title VII.").

PFG's contention, although a reasonable one, has been rejected by the only appellate court to have addressed the matter. In *Serrano v. Cintas Corp.*, the U.S. Court of Appeals for the Sixth Circuit reversed the district court's decision in favor of the defendant employer, which had accepted the present contention made by PFG, and stated:

> The first issue that we must address, and the one given considerable attention by Cintas on appeal, is whether the EEOC may employ the [*International Brotherhood of*] Teamster [*v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)] framework only when it acts pursuant to § 707. For the reasons that follow, we conclude that the EEOC's enforcement authority is not so limited.
>
> . . . .
>
> . . . [W]e hold that the district court erred in concluding that the EEOC may not pursue a claim under the *Teamsters*

---

3. *Compare* 42 U.S.C. § 2000e–5(e)(3)(B) ("In addition to any relief authorized by section 1981a of this title [including compensatory and punitive damages], liability may accrue and an aggrieved person may obtain [equitable] relief as provided in subsection (g)(1), including recovery of back pay...."), *with id.* § 2000e–6(a) (allowing the EEOC to "request[] such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as [it] deems necessary to insure the full enjoyment of the rights" described in Title VII).

4. Section 707 authorizes the EEOC to bring an action:

> [w]henever [it] has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described.

42 U.S.C. § 2000e–6(a). However, § 706 refers generally to the EEOC's authority "to prevent any person from engaging in any unlawful employment practice." *Id.* § 2000e–5(a).

pattern-or-practice framework, pursuant to its authority vested in § 706 of Title VII.

699 F.3d 884, 894–96 (6th Cir.2012).

Accordingly, the Court will not now dismiss the EEOC's § 706 claim. However, inasmuch as this decision will not affect the course of proceedings in Phase One of the instant lawsuit,[5] the Court would reconsider its holding prior to the commencement of Phase Two should circumstances warrant doing so.

■ The Court does not agree with PFG's contention that the EEOC has failed to allege facts sufficient to support a plausible claim that PFG engaged in a pattern or practice of discrimination against females in its hiring decisions for operative positions at the Broadline Division warehouse facilities.

■ There is no heightened pleading standard in employment discrimination cases. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), overruling on other grounds recognized by Francis v. Giacomelli, 588 F.3d 186 (4th Cir.2009). "The Twombly Court made clear that its holding did not contradict the Swierkiewicz rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'" Reed v. Airtran Airways, 531 F.Supp.2d 660, 666 (D.Md. 2008).[6]

Here, the EEOC alleges direct evidence of a pattern or practice of discrimination. Indeed, the EEOC quite reasonably contends that the comments of a higher-level PFG employee, then-Corporate Senior Vice President of Operations Pekscamp, effectively "constituted a directive to managers to favor males and to discriminate against females in hiring." Am. Compl. ¶ 8. In addition to outlining Pekscamp's comments, the EEOC provides specific examples of how this "directive" was carried out in Broadline warehouses in Massachusetts, Virginia, and Texas, among other states. See id. ¶¶ 86–91.

■ To the extent that PFG contends the EEOC's use of statistical allegations in the Amended Complaint is insufficient to support a plausible claim of entitlement to relief, the Court agrees with the EEOC that it is not required to plead statistical allegations, much less provide detailed explanations of those statistics to survive a motion to dismiss. Cf. E.E.O.C. v. LA Weight Loss, 509 F.Supp.2d 527, 533 (D.Md.2007) ("Although most pattern-or-practice discrimination cases are proved through the use of statistics, statistical evidence is not necessary to establish a prima facie case." (emphasis added)); see also Tr. Jan. 7 at 89:1–92:3, 101:9–103:6. Thus, assuming—as it must—that the factual allegations in the Amended Complaint are true, the Court concludes that the EEOC has presented a plausible claim that PFG engaged in a pattern or practice of discriminating against females.

5. By separate Order the Court has bifurcated the case for trial. In Phase One, the EEOC shall seek to establish its pattern or practice claim. Should it succeed, the case shall proceed to Phase Two to determine claims made on behalf of individuals allegedly harmed by application of the pattern or practice.

6. "Yet a plaintiff must still allege facts sufficient to state each element of his claim." E.E.O.C. v. PBM Graphics Inc., 877 F.Supp.2d 334, 343 (M.D.N.C.2012). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir.2010), aff'd sub nom. Coleman v. Court of Appeals of Maryland, —— U.S. ——, 132 S.Ct. 1327, 182 L.Ed.2d 296 (2012).

PFG contends that the Amended Complaint does not present sufficient specific factual allegations to render plausible the statement that PFG "continues [as of the filing of the Amended Complaint] to maintain" the alleged pattern or practice of discrimination. Am. Compl. ¶ 80. However, in view of the undeniable adequacy of the allegations of such a pattern or practice existing until the departure of Pekscamp at the end of 2008 and the alleged existence of supporting statistical data, there is at least a plausible claim that the pattern or practice continued as asserted by the EEOC.

█ PFG further contends that, even if there were a pattern of practice as alleged by the EEOC, (1) any claims that arose prior to October 12, 2007 are barred from the pattern or practice claim because they fall outside of the statute of limitations and (2) any claims that arose after July 1, 2009 are barred because the EEOC failed to exhaust administrative remedies. *See* [Document 12–1] at 9–15. These contentions will be addressed—in light of the circumstances pertaining to specific individuals—in due course. However, the existence of these potential defenses to claims on behalf of some specific individuals does not render implausible the EEOC's pattern or practice claim.

The Court finds that the EEOC has pled sufficiently a plausible claim that PFG engaged in an ongoing pattern or practice of gender-based discrimination by failing to hire a class of female applicants for certain operative positions at the Broadline Division warehouse facilities.

## V. *CONCLUSION*

For the foregoing reasons, Defendants' Partial Motion to Dismiss is DENIED.